DRESSER INDUSTRIES,
INC., Petitioners,

v.

PAGE PETROLEUM, INC.,
et al., Respondents,

and

PAGE PETROLEUM, INC.,
et al., Petitioners,

v.

HOUSTON FISHING TOOLS
CO., Respondent.

No. D–2124.

Supreme Court of Texas.

April 7, 1993.

Rehearing Overruled June 9, 1993.

**506**

J.G. Adami, Jr., L.H. Warburton, Jr., Alice, for petitioners.

Jess H. Hall, Jr., Houston, H. Dustin Fillmore, Fort Worth, Kent C. Sullivan, Jennifer Bruch Hogan, Winstol D. Carter, Jr., Houston, for respondents.

## OPINION

GONZALEZ, Justice.

This is an oil and gas case involving a "release" of liability for any negligence which may occur after the making of the release. We must determine whether the fair notice requirements applicable to indemnity agreements also apply to releases that operate to relieve a party in advance for responsibility for its own negligence, and whether compliance with the fair notice requirements is a question of law for the court or a question of fact for the jury. The court of appeals reversed the judgment of the trial court for Page Petroleum against Houston Fishing Tools because it determined that the agreement between the parties contained an enforceable release which barred any recovery for Page. 821 S.W.2d 359. However, the court of appeals affirmed the judgment of the trial court against Dresser Industries, Inc. because it held that the indemnity clause in the Page–Dresser agreement did not preclude a recovery for Page. 821 S.W.2d at 363–64. We reverse and remand the take-nothing judgment of the court of appeals in favor of Houston Fishing and affirm the judgment against Dresser.

Page drilled a well located in Colorado County to a depth of 11,000 feet and contracted with Dresser to conduct log tests. The contract between Dresser and Page ("the Dresser contract") had a provision which provided that "[Page] shall indemnify [Dresser] and hold [Dresser] free and harmless from all claims for ... subsurface damage or injury to the well ... in-

cluding claims alleging that injuries or damages were caused by [Dresser's] negligence, whether such claims are made by [Page], by [Page's] employees, or by third parties." During the performance of the tests, a piece of Dresser's equipment "got stuck" in the well.

Page then contracted with Houston Fishing to fish the equipment from the well. The contract between Page and Houston Fishing ("the Houston Fishing contract") possessed a provision which provided that "[Houston] shall not be liable to [Page] on any theory of legal liability [including the sole or concurrent negligence of [Houston]] ... for any injury or damage ... to property...." While Houston Fishing was attempting to dislodge the equipment, it lost several thousand feet of wireline and drill pipe down the hole which could not be retrieved. Page attempted to clear the hole by performing a side procedure. This side procedure was not successful; therefore, Page plugged and abandoned the well and was forced to drill a new well.

Page then brought suit against Dresser and Houston Fishing alleging negligence and seeking compensation for damages to the original well. Both Dresser and Houston Fishing defended the suit based on the contractual provisions recited above and argued that these agreements with Page insulated them from liability for their own negligence. Page argued in response to motions for summary judgment, instructed verdict, and directed verdict that these provisions were of no effect because they were not conspicuous, they did not meet the express negligence test, and they were void under chapter 127 of the Texas Civil Practice and Remedies Code.

After a jury found that Page's damages were caused 40% by Houston Fishing, 10% by Dresser, and 50% by Page, the trial court rendered judgment against both Dresser and Houston Fishing. The judgment against Houston Fishing was for $334,400.00 plus prejudgment interest and the judgment against Dresser was for $83,-600.00 plus prejudgment interest. Both

Dresser and Houston Fishing appealed. The court of appeals upheld the award against Dresser and reversed the award against Houston Fishing. 821 S.W.2d 359. The court of appeals reasoned that the Dresser contract contained an **indemnity** clause which did not bar Page's recovery because an indemnity clause could not operate to extinguish a claim between the parties to a suit. 821 S.W.2d at 363. The court of appeals reversed the award against Houston Fishing because the Houston Fishing contract contained a **release** which did operate to bar Page's recovery. 821 S.W.2d at 364. The court of appeals held that while a release might be subject to the conspicuousness requirement, Page had waived such an argument by failing to request jury findings on such a factual issue. *Id.* Justice Vance dissented in part on the rationale that the fair notice requirements of conspicuousness and express negligence applied to releases as well as to indemnity agreements, and thus the release in the Houston Fishing contract should not bar Page's recovery since the release was not conspicuous **as a matter of law.** 821 S.W.2d at 369.

Both Dresser and Page filed applications for writ of error in this Court. We granted both applications and today hold that the fair notice requirements apply to both indemnity agreements and releases, and that the contractual provisions in this case were not conspicuous as a matter of law.

### I.

We must first determine whether the fair notice requirements of conspicuousness and the express negligence doctrine apply to releases as well as to indemnity agreements when, as in the circumstances of this case, the effect of both is to relieve a party in advance of responsibility for its own negligence. It is important to note that our discussion today is limited solely to those types of releases which relieve a party in advance of liability for its own negligence.[1] Thus, for the purposes

---

1. Indemnity and release agreements are utilized in widely different contexts. For example, a

settlement and release agreement is often utilized by parties settling a dispute after the dis-

of this case, a release, or hold harmless agreement, is defined as:

> A contractual arrangement whereby one party assumes the liability inherent in a situation, thereby relieving the other party of responsibility.... [An] [a]greement or contract in which one party agrees to hold the other without responsibility for damage or other liability arising out of the transaction involved.

BLACK'S LAW DICTIONARY 658 (5th ed. 1979). In general, a release surrenders legal rights or obligations between the parties to an agreement. *See Cox v. Robison,* 105 Tex. 426, 150 S.W. 1149, 1155 (Tex.1912). It operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter. *See generally Hart v. Traders & General Ins. Co.,* 189 S.W.2d 493, 494 (Tex.1945). For these reasons, a release is expressly designated as an affirmative defense. TEX.R.CIV.P. 94.

■ In comparison, an indemnity agreement is defined as:

> A collateral contract or assurance, by which one person engages to secure another against an anticipated loss or to prevent him from being damnified by the legal consequences of an act or forbearance on the part of one of the parties or of some third person.

BLACK'S LAW DICTIONARY 692 (5th ed. 1979). An indemnity agreement is a promise to safeguard or hold the indemnitee harmless against either existing and/or future loss liability. *See generally Russell v. Lemons,* 205 S.W.2d 629, 631 (Tex.Civ.App.—Amarillo 1947, writ ref'd n.r.e.). The agreement creates a potential cause of action in the indemnitee against the indemnitor. *Id.*

■ As Justice Vance stated in his dissenting opinion in the court of appeals, these agreements, whether labeled as indemnity agreements, releases, exculpatory

agreements, or waivers, all operate to transfer risk. 821 S.W.2d at 368. Although we recognize that most contractual provisions operate to transfer risk, these particular agreements are used to exculpate a party from the consequences of its own negligence. Because indemnification of a party for its own negligence is an extraordinary shifting of risk, this Court has developed fair notice requirements which apply to these types of agreements.[2] The fair notice requirements include the express negligence doctrine and the conspicuousness requirement. *Enserch Corp. v. Parker,* 794 S.W.2d 2, 8 (Tex.1990). The express negligence doctrine states that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. *Id.; Ethyl Corp. v. Daniel Const. Co.,* 725 S.W.2d 705, 707–08 (Tex.1987). The conspicuous requirement mandates "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *See Ling & Co. v. Trinity Sav. & Loan Ass'n,* 482 S.W.2d 841, 843 (Tex.1972).

■ As stated above, these fair notice requirements have only been applied to indemnity agreements and have not as yet been applied to releases that relieve a party in advance of liability for its own negligence. *See Getty Oil Co. v. Insurance Co. of N. America,* 845 S.W.2d 794, 806 (Tex. 1992) (Court refused to extend express negligence doctrine to additional insured provisions because the doctrine has only been applied to contractual indemnity provisions). In fact, one court of appeals specifically declined to extend the express negligence doctrine to an exculpatory provision which relieved a party in advance for responsibility for its own negligence. *See Whitson v. Goodbodys, Inc.,* 773 S.W.2d 381, 383 (Tex.App.—Dallas 1989, writ denied). However, we can discern no reason

---

puted transaction or occurrence has taken place. Today's opinion applies the fair notice requirements to indemnity agreements and releases only when such exculpatory agreements are utilized to relieve a party of liability for its own negligence in advance.

**2.** The fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement. *See generally Cate v. Dover Corp.,* 790 S.W.2d 559, 561 (Tex. 1990).

to fail to afford the fair notice protections to a party entering into a release when the protections have been held to apply to indemnity agreements and both have the same effect. The policy considerations underlying the enforcement of indemnity clauses to warrant the application of the fair notice requirements to releases as well. *See* Julie Ann Springer, Comment, *Releases: An Added Measure of Protection from Liability,* 39 BAYLOR L.REV. 487, 492 (1987). This is especially true because of the difficulty often inherent in distinguishing between these two similar provisions.[3] Therefore, we hold that the fair notice requirements of conspicuousness and the express negligence doctrine apply to both indemnity agreements and to releases in the circumstances before us; thus, we disapprove of the *Whitson* opinion. Since the fair notice requirements apply to the provisions in both the Dresser contract and the Houston Fishing contract, we must now analyze the effect of such requirements on these two contracts.

## II.

■ Before we reach the issue of whether the fair notice requirements were complied with in these two contracts, we must first address Dresser and Houston Fishing's argument that Page waived this issue by failing to request jury questions relating to fair notice. Dresser and Houston Fishing rely on this Court's opinion in *Goodyear Tire & Rubber Co. v. Jefferson Const. Co.,* 565 S.W.2d 916, 920 (Tex.1978)

for support of their position that the fair notice requirements, and particularly the conspicuousness requirement, are questions of fact for the jury to resolve. In *Jefferson,* this Court stated:

> We hold that under the circumstances of this commercial transaction, there was some evidence that the indemnity provision was conspicuous enough to give Jefferson fair notice of its existence. Because there was evidence of fair notice to support the trial court's implied finding to that effect, the court of civil appeals erred in reversing and denying indemnity on this ground.

*Id.* Although we do recognize that *Jefferson* did treat the issue of compliance with the conspicuousness requirement as a fact question for the jury, today we overrule that portion of *Jefferson* and hold that compliance with both of the fair notice requirements is a question of law for the court.[4]

We reach this result for two reasons. First, the Texas Uniform Commercial Code, which governs the sale of goods as well as other commercial transactions, specifically states that "[w]hether a term or clause is 'conspicuous' or not is for decision by the court." TEX.BUS. & COM.CODE ANN. § 1.201(10) (Tex.UCC). Although we recognize that this provision is not directly controlling in this case which involves service contracts, it is anomalous to have the issue of conspicuousness a fact question for service contracts and a law question for contracts involving the sale of goods. Second, the same policies which support the

---

3. An example of the difficulty inherent in distinguishing the provisions is the risk-shifting clause contained in the Dresser contract which provided that Page would indemnify Dresser and hold Dresser free and harmless from all claims for Dresser's negligence whether such claims were made by Page or its employees or third parties. The court of appeals held that this was an indemnity provision which could not operate as an affirmative defense barring the cause of action by Page against Dresser. 821 S.W.2d at 363–64. However, we disagree with the appellate court's characterization of this provision. This provision contains agreements to both indemnify and release, and the court of appeals erred by holding that it was strictly an indemnity agreement which could not operate between the parties as an affirmative defense. Under our holding today, howev-

er, the technical characterization of the provision is not controlling since the fair notice requirements now apply to both indemnity agreements and releases in this context.

4. We do note that an earlier opinion of this Court, *Enserch Corp. v. Parker,* 794 S.W.2d 2, 8 (Tex.1990), also treated the issue of conspicuousness as a question of law, although the opinion did not expressly disapprove or overrule the language to the contrary contained in *Jefferson.* In *Enserch Corp.,* this Court considered the merits of an argument concerning the conspicuousness of an indemnity provision which was made in response to a motion for summary judgment. *Id.* The only possible way for this Court to have considered such an argument would have been to treat the issue as a question of law.

statutory mandate of conspicuousness being a question of law in contracts for goods exist in service contracts as well. Service providers need to be able to rely on uniform decisions on the issues of fair notice for commercial certainty. If juries were to decide fair notice issues, identical contracts could be held to be unenforceable by one jury and enforceable by another jury. Service providers could never be entirely certain about the validity of the indemnity clause or release in their standard form contract. Therefore, to promote certainty and uniformity in the law, we hold that the issue of compliance with the fair notice requirements is a question of law for the court.

■ Page never pleaded nor submitted jury questions on fair notice. However, it did argue that the provisions in both the Dresser contract and the Houston Fishing contract did not comply with the fair notice requirements in responses to motions for summary judgment, directed verdict, and instructed verdict. It also urged the lack of compliance with the fair notice requirements to the court of appeals and to this Court. Thus, Page has not waived the argument that these exculpatory provisions did not meet the fair notice requirements, and we now turn to the substance of its argument.

### III.

Page first argues that the exculpatory provisions in both the Dresser contract and the Houston Fishing contract are not conspicuous. We agree; therefore, it is not necessary to reach the merits of Page's other arguments.[5]

In *Enserch Corp. v. Parker*, 794 S.W.2d 2, 9 (Tex.1990), this Court held that the indemnity language was sufficiently con-

spicuous to afford fair notice of its existence when the entire contract appeared on one page and the language was on the front side of the contract, not hidden under a separate heading or surrounded by unrelated terms. In *Jefferson*, this Court found some evidence of conspicuousness in a commercial transaction when one of the provisions of the purchase order referred specifically to the indemnity provision on the reverse side of the order and there was printed in large, red type on the front of each page of the purchase order a notice that the agreement included the terms on the reverse side of the order. 565 S.W.2d at 920.

However, the court of appeals held in *K & S Oil Well Service, Inc. v. Cabot Corp.*, 491 S.W.2d 733, 737 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.) that an indemnity provision was not conspicuous and was therefore unenforceable because it was hidden on the reverse side of a sales order under a paragraph entitled "Warranty" and was surrounded by completely unrelated terms. In *Rourke v. Garza*, 511 S.W.2d 331, 344 (Tex.Civ.App.—Houston [1st Dist.] 1974), *aff'd*, 530 S.W.2d 794 (Tex.1975), the appellate court held that indemnity provisions appearing on the back side of a delivery order were not so conspicuous as to give fair notice of an indemnity agreement. The Houston appellate court also refused to enforce indemnity language in *Safway Scaffold Co. v. Safway Steel Prod., Inc.*, 570 S.W.2d 225, 228 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) because the language appeared in small, light type on the back of a rental form and was surrounded by unrelated terms.

■ The Uniform Commercial Code provides a definite standard for conspicuousness:

---

**5.** Page also argues that these provisions violate the express negligence doctrine. Although we do not need to reach the express negligence doctrine issue, we do note that recent cases from this Court have developed the law and the standards for evaluating compliance with this doctrine. *See Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 56–57 (Tex.1991); *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex. 1990); *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex.1989);

*Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex.1987). Finally, Page argues that the provisions are void under chapter 127 of the Texas Civil Practice and Remedies Code, which provides that certain types of indemnity agreements pertaining to a well for oil, gas, and water are void. Although we do note that today's holding would suggest that chapter 127 would apply to releases as well as to indemnity agreements, we do not need to reach the merits of such an argument.

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous".

TEX.BUS. & COM.CODE ANN. § 1.201(10) (Tex. UCC). This standard for conspicuousness in Code cases is familiar to the courts of this state and conforms to our objectives of commercial certainty and uniformity. *See Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex.1990); *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972); *Ellmer v: Delaware Mini–Computer Services, Inc.*, 665 S.W.2d 158 (Tex. App.—Dallas 1983, no writ); *W.R. Weaver Co. v. Burroughs Corp.*, 580 S.W.2d 76 (Tex.Civ.App.—1979, writ ref'd n.r.e.). We thus adopt the standard for conspicuousness contained in the Code for indemnity agreements and releases like those in this case that relieve a party in advance of responsibility for its own negligence. When a reasonable person against whom a clause is to operate ought to have noticed it, the clause is conspicuous. For example, language in capital headings, language in contrasting type or color, and language in an extremely short document, such as a telegram, is conspicuous.

In applying these standards to the contractual provisions at issue in this case, we conclude that the release provisions in both the Dresser contract and the Houston Fishing Contract are not conspicuous. In both contracts, the provisions are located on the back of a work order in a series of numbered paragraphs without headings or contrasting type.[6] Furthermore, the contracts are not so short that every term in the contracts must be considered conspicuous. Therefore, we hold that these contractual exculpatory provisions are without effect since they do not comply with the fair notice requirement of conspicuousness.

## IV.

Houston Fishing raised two cross points in this Court which we must consider before disposing of this cause. Houston Fishing first argues that the measure of damages employed by the trial court was erroneous. The jury found that the well had a cash market value of $836,000.00 before it was damaged and no salvage value after the damage. The jury also found that the reasonable and necessary cost of the remedial work on the damaged well was $366,000.00,[7] and the reasonable and necessary cost of drilling and equipping the replacement well was $494,112.00. The jury apportioned 40% of the negligence to Houston Fishing, 10% of the negligence to Dresser, and 50% of the negligence to Page. The trial court thus rendered judgment against Houston Fishing for 4/10 of $836,000.00, or $334,400.00.

Houston Fishing argues that the trial court should have limited its damages to 4/10 of $494,112.00, the cost of drilling the replacement well. Houston Fishing relies on the case of *Atex Pipe & Supply, Inc. v. Sesco Production Co.*, 736 S.W.2d 914, 917 (Tex.App.—Tyler 1987, writ denied), which held that if a well can be reproduced by drilling another one, the proper measure of damages is the cost of drilling the replacement well less any salvage value of the original well, as long as this cost does not exceed the reasonable cash market value of the well immediately prior to the occurrence in question.

---

**6.** The Dresser contract has eighteen uniformly printed and spaced paragraphs printed on the reverse side of the contract with a provision incorporating all eighteen paragraphs on the front side of the contract. Similarly, the Houston Fishing contract has nine uniformly printed and space paragraphs printed on the reverse side of the contract with a provision incorporating such terms on the front side of the contract.

**7.** After the equipment became lodged in the well, Page attempted a side tracking maneuver to attempt to save the well. This procedure involved drilling through the casing of the damaged well above the lodged equipment and attempting to drill another well adjacent to the damaged well through that opening. However, this remedial effort failed, so Page drilled a replacement well.

However, the *Atex* case did not deal with a situation analogous to the situation in the present case. In this case, Page made what the jury considered a reasonable attempt to save the well with necessary expenditures of $366,000.00. Page is entitled to recover this reasonable and necessary expenditure as part of the cost of drilling the replacement well. *See Dowell, Inc. v. Cichowski*, 540 S.W.2d 342, 351–52 (Tex.Civ.App.—San Antonio 1976, no writ). Thus, the total cost of drilling the replacement well, including the expenditures for the remedial work on the original well, was $860,112.00 ($494,112.00 plus $366,000.00). This cost of drilling the replacement well exceeds the cash fair market value of the original well prior to the occurrence in question; therefore, the trial court correctly rendered judgment against Houston Fishing for $334,400.00.

Houston Fishing's second cross point is that the evidence is factually insufficient to support the damage award against it. The court of appeals did not reach this factual insufficiency challenge to the trial court's judgment since the appellate court found that the release was enforceable. Thus, we must remand the cause against Houston Fishing to the court of appeals for consideration of its sufficiency challenge to the damages award.

Therefore, we affirm the judgment of the court of appeals in favor of Page against Dresser. We reverse the take-nothing judgment of the court of appeals in favor of Houston Fishing, and remand to that court for consideration of the factual insufficiency challenge to the damages award.

DOGGETT, J., not sitting.