**DOUGLAS CABLEVISION IV, L.P., Appellant,**

v.

**SOUTHWESTERN ELECTRIC POWER COMPANY, Appellee.**

**No. 06-98-00008-CV.**

Court of Appeals of Texas, Texarkana.

Submitted Sept. 9, 1998.

Decided Jan. 22, 1999.

Rehearing Overruled March 23, 1999.

Linda J. Burgess, Michael Truesdale, Hughes & Luce, L.L.P., Austin, for appellant.

G. William Lavender, Shannon Tuckett, Lavender, Rochelle, Barnette, Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Douglas Cablevision (Douglas) appeals from the granting of a summary judgment in favor of Southwestern Electric Power Company (SWEPCO) that requires Douglas to indemnify SWEPCO for a settlement claim pursuant to a contractual indemnification clause. Douglas also appeals the denial of its own summary judgment motion.

Douglas contends that the trial court erred in granting summary judgment in favor of SWEPCO and in overruling Douglas's own summary judgment motion (1) because the indemnification clause at issue was not conspicuous, which rendered it unenforceable, and (2) because even if the clause were enforceable, the underlying claim did not arise out of the performance of the agreement as required for the indemnification clause to become effective.

Douglas and SWEPCO entered into a lease contract in 1992 that allowed Douglas to attach its cable television wires to utility poles owned by SWEPCO. The contract contained an indemnification provision which provided that Douglas would indemnify SWEPCO for costs associated with damages sustained as the result of SWEPCO's own negligence. The indemnity provision is located on pages nine and ten of an agreement, which contains thirteen pages of text and several additional pages of exhibits. The indemnity provision looks similar to other provisions in the agreement, with the same typeface and numbering system as the other provisions. Also like the other provisions, the indemnity clause is untitled. The agreement provides in part:

> CATV Company [Douglas] agrees to indemnify and hold harmless from any acts or omissions, alleged or found to constitute negligence or other fault, caused directly or indirectly or solely by the Electric Company [SWEPCO] ... or jointly by the Electric Company ... and the CATV Company.... The CATV Company agrees that it is the specific intent of the CATV Company to indemnify the Electric Company for the negligent acts or omissions of the Electric Company....

This controversy stems from an incident in 1995, when an employee of a house-moving company was injured as a result of

electrical shock and burns he sustained while performing his job duties in moving a house. The employee stood upon the roof of the moving house and guided low hanging obstructions, such as tree branches and wires, out of the way of the house as it moved down the street. While the employee was lifting a Douglas cablewire, which was attached to a SWEPCO utility pole pursuant to the agreement between SWEPCO and Douglas, out of the way of the house, the employee came into contact with electricity and was injured as a result.

The employee sued his employer, Douglas, and SWEPCO for the injuries he sustained. SWEPCO filed a cross-claim against Douglas for indemnification of all costs SWEPCO would incur as a result of the underlying personal injury suit. SWEPCO then moved for summary judgment against Douglas on the indemnification claim. SWEPCO contended that no fact issue existed as to Douglas's obligation to indemnify SWEPCO because the contract clearly sets out Douglas's obligation. Douglas filed its own summary judgment motion against SWEPCO, contending that the indemnity provision contained in the lease provision was unenforceable as a matter of law because it did not satisfy the fair notice requirement of conspicuousness and the injury which SWEPCO asserted as the basis of the indemnity obligation did not arise out of its performance of the lease agreement. Before the trial court ruled on the motions for summary judgment, SWEPCO and Douglas settled with the injured third-party employee for $350,000 each, for a total settlement of $700,000.

The trial court granted SWEPCO's motion for summary judgment and denied Douglas's motion. The trial court ordered Douglas to pay $350,000 to SWEPCO for SWEPCO's portion of the settlement, plus attorney's fees for defending the suit, and also for interest.

■ Summary judgment is appropriate if the summary judgment proof "on file at the time of the hearing ... show[s] that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response."[1] When deciding whether a disputed issue of material fact precludes summary judgment, an appellate court views all evidence in the light most favorable to the nonmovant and resolves all doubts in his favor.[2] If any theory advanced in a motion for summary judgment supports the granting of summary judgment, a court of appeals may affirm, regardless of whether the trial court specified the grounds on which it relied.[3] Where both parties file a motion for summary judgment and one is granted and the other is denied, the denial may be considered by the reviewing court if the appealing party complains of both the granting of the opponent's motion and the denial of its own motion.[4]

■ Douglas first contends that the trial court erred in granting summary judgment in favor of SWEPCO because the indemnity provision contained in the lease agreement is unenforceable in that it does not comply with the fair notice requirement of conspicuousness.

■ The Texas Supreme Court has held that such extraordinary risk-shifting clauses like the one contained in the lease agreement of the present case, where Douglas agreed to indemnify SWEPCO for SWEPCO's own negligence, must satisfy two fair notice requirements. First, the agreement must meet the express negligence doctrine, which requires a party

1. Tex.R. Civ. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 23 (Tex.1990).

2. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

3. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623 (Tex.1996).

4. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958).

seeking indemnity from the consequences of that party's own negligence to express the intent in specific terms within the four corners of the contract.[5] Second, the agreement must meet the conspicuousness requirement. A provision is conspicuous if a reasonable person against whom a clause is to operate ought to have noticed the clause.[6] This characterization of conspicuousness is derived from the definition of conspicuousness as found in Section 1.201(10) of the Texas Business and Commerce Code.[7] Section 1.201(10) provides as follows: [8]

> (10) "Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous." Whether a term or clause is "conspicuous" or not is for decision by the court.

Compliance with the fair notice requirements is a question of law for the court.[9]

There is no dispute between the parties that the indemnity provision meets the express negligence doctrine requirement. Douglas only disputes the conspicuousness of the provision under the second prong of the fair notice requirement, and it raised that issue in its response to SWEPCO's summary judgment motion and its own cross-motion.

■ In response, SWEPCO contends that the indemnity provision is conspicuous because it spans two pages of a thirteen-page document, making it a significant part of the agreement as a whole. Furthermore, SWEPCO contends that the conspicuousness requirement is moot as defined by Section 1.201(10) because the contract in question is not a *form* contract, which SWEPCO contends is the type of contract described in the third sentence of Section 1.201(10) when the definition discusses methods of creating a conspicuous clause. SWEPCO cites no authority for this interpretation other than the language of the statute. The term "form" is not defined in Section 1.201, the general definition section where the definition for "conspicuous" can be found. Section 1.201 provides definitions for terms which are used throughout the Texas Uniform Commercial Code. We believe that the term "form," as used in Section 1.201, simply denotes any document which may be utilized in any UCC-governed transaction. Since the Texas Supreme Court has applied the UCC definition of conspicuous to risk-shifting clauses, we believe we should apply this definition to any document which contains a risk-shifting clause, regardless of whether the document is original, preprinted, computer-generated, or used without substantial changes for numerous parties.

■ However, even if we were to agree with SWEPCO that this definition can only be applied to "form contracts," the contract between Douglas and SWEPCO is clearly a form contract. A form can be defined as "a printed or typed document with blank spaces for insertion of required or requested information." [10] The contract between Douglas and SWEPCO contains blank lines for the insertion of the date, the name of the cable television company, and the vicinity where the poles to be used by the cable television company are located. [See illustration]. Even if SWEPCO's argument that the conspicuous definition

---

**5.** *Ethyl Corp. v. Daniel Const. Co.,* 725 S.W.2d 705, 707–08 (Tex.1987).

**6.** *Dresser Ind., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 511 (Tex.1993).

**7.** *Dresser,* 853 S.W.2d at 509.

**8.** Tex. Bus. & Com.Code Ann. § 1.201(10) (Vernon 1994).

**9.** *Id.*

**10.** Merriam-Webster Collegiate Dictionary 458 (10th ed.1993).

only applies to form contracts was persuasive, the definition would still apply to the contract in dispute in the present case.

CATV-ARK & TEX-9/90

Contract No. 2 9 2 5

### LEASE AGREEMENT TO MAKE ATTACHMENTS OF TELEVISION CABLE AND NECESSARY APPURTENANT FACILITIES TO POLES AND AGREEMENT ON UNDERGROUND FACILITIES

This Agreement made this _22nd_ day of _____June_____ , 19_92_ , between

_Douglas Cablevision IV L.P._____ ,

hereinafter called "CATV COMPANY" and SOUTHWESTERN ELECTRIC POWER COMPANY, a

Delaware Corporation, hereinafter called "ELECTRIC COMPANY";

### WITNESSETH:

1. Subject to the terms and conditions herein, permission is hereby granted by Electric Company to CATV Company to use certain Electric Company-owned poles in Bloomburg, Bowie County, Buchanan, Cass County, and Leary, and in the vicinity of _Texas; and Nashville, Arkansas_____ , for the purpose of attaching television cable, amplifiers, connection boxes and other necessary facilities. Such attachments are to be made in accordance with Electric Company's electric distribution standards for communication lines now in effect or which may be hereafter made effective including, but not limited to, the specifications contained in Electric Company's Exhibit "A" attached hereto and made a part hereof (Electric Company Standards). All attachments shall conform to the latest applicable edition of the National Electrical Safety Code, and all laws, ordinances and regulations now in force or which may be enacted in the future by any governmental body or agency having jurisdiction. Any strengthening of poles (by guying or otherwise) required to accommodate the attachments of CATV Company shall be provided by and at the expense of CATV Company. CATV Company shall install the necessary grounds for adequately grounding CATV Company's television facilities. Interconnections shall be made between television system grounds and Electric Company facilities grounds, in accordance with accepted grounding procedures. Subject to the "grandfathering" provisions of paragraph 12, service drops shall be constructed in the manner

8

31

Douglas and SWEPCO also disagree as to what the analysis should consist of in determining conspicuousness of a particular provision. Douglas contends that the

analysis is purely an objective one whereby the court should look only to whether attention can reasonably be called to the disclaimer language.[11] The conspicuous standard can be met by a heading printed in capital letters and by text printed in larger or contrasting type.[12] The Houston appellate court specifically adopted this "objective analysis only" view.[13] The court stated:

> [W]e read *Fisk* [*Electric Co. v. Constructors & Assoc., Inc.*, 888 S.W.2d 813 (Tex.1994)], *Dresser* [*Ind., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex. 1993)], and other relevant decisions to direct that the conspicuousness of an indemnity agreement be established by objective factors on the face of the agreement, rather than to vary according to the subjective sophistication and experience of each party against whom the agreement may be asserted.[14]

In contrast, SWEPCO contends that, in addition to the objective factors, the sophistication of the parties to the agreement must also be evaluated by the court. In support of the additional subjective analysis, SWEPCO focuses on the Supreme Court's language in *Dresser Ind., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505 (Tex.1993)* where the Court states that a clause is conspicuous when "a reasonable person against whom a clause is to operate ought to have noticed it." [15] However, the Supreme Court has spoken directly to this issue and found that only an objective analysis is required.[16]

All of the twenty-two numbered paragraphs, including paragraph seventeen which includes the indemnity provision, are printed in the same size and type of font. None of the paragraphs are preceded with any kind of descriptive heading. The actual language which requires Douglas to indemnify SWEPCO is contained in two sentences spanning roughly one half page of a thirteen-page document. The indemnity provision was no more visible than any other provision in the agreement and does not appear to be designed to draw the attention of a reasonable person against whom the clause was to operate. We find that the clause was not conspicuous and did not comply with the fair notice requirement. This point of error is sustained.

Even if the indemnity provision is not conspicuous, SWEPCO contends that the summary judgment was proper because the fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement.[17]

■ However, Douglas contends that SWEPCO waived this entire line of argument because SWEPCO did not raise Douglas's knowledge in its summary judgment motion. SWEPCO did not raise this argument in its own summary judgment motion against Douglas, nor did it raise the argument in its response to Douglas's motion for summary judgment. SWEPCO contended that the provision was conspicuous because it was an important part of the agreement between the two parties which was reviewed at the highest levels by Douglas. In support of this argument, SWEPCO attached summary judgment ev-

**11.** *Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex.1990).

**12.** *U.S. Rentals, Inc. v. Mundy Serv. Corp.*, 901 S.W.2d 789 (Tex.App.—Houston [14th Dist.] 1995, writ denied) (citing Tex. Bus. & Com.Code Ann. § 1.201(10)).

**13.** *Id.*

**14.** *U.S. Rentals*, 901 S.W.2d at 792.

**15.** *Dresser*, 853 S.W.2d at 511.

**16.** "Admittedly, an ambiguity is created by the requirement that disclaimer language be conspicuous to 'a reasonable person against whom it is to operate.' Comment 10, however, clearly contemplated an objective standard, stating the test as 'whether attention can reasonably be expected to be called to it.'" *Cate*, 790 S.W.2d at 560.

**17.** *Dresser*, 853 S.W.2d at 508 n. 2 (citing *Cate*, 790 S.W.2d at 561).

idence that at least one high level executive at Douglas read the agreement and possibly another read it as well. Also, the evidence demonstrated that the executives at Douglas had access to legal counsel. However, SWEPCO never raised whether Douglas had actual knowledge of the indemnity clause in any of its pleadings.

 Actual notice or knowledge is in the nature of an affirmative defense to a claim of lack of fair notice. It is the indemnitee's burden to prove (not the indemnitor's burden to disprove) actual notice or knowledge.[18] SWEPCO had the burden to raise a fact issue on the knowledge question and failed to do so below. We find that SWEPCO's argument as to whether Douglas had actual knowledge of the agreement was raised for the first time on appeal and is waived.

 SWEPCO also contends that the fair notice requirements do not apply because Douglas did not obtain a jury finding that SWEPCO was negligent and therefore did not obtain a finding that Douglas was being required to indemnify SWEPCO for its own negligence. SWEPCO relies on *Champlin Petroleum Company v. Goldston Corporation*, where the Corpus Christi Court of Appeals found that the express negligence rule, the first prong of the fair notice requirement, did not apply because the indemnitor did not obtain a finding that the indemnitee was negligent.[19] Based upon this holding, SWEPCO contends that Douglas must prove that SWEPCO was actually negligent in order for the fair notice requirements to apply. *Champlin* has since been overruled by the Texas Supreme Court in *Fisk Electric Co. v. Constructors & Assoc., Inc.*[20] In *Fisk*, another case dealing with the express negligence portion of the fair notice requirements, the Court found that compliance

with the express negligence rule was a matter of contract interpretation and not an affirmative defense.[21] The Court also realized the potential for abuse if a finding of negligence was required before a party to the contract could challenge the enforceability of the indemnity provision. Such a rule "would also leave indemnitors vulnerable to indemnitees who might settle cases without admitting negligence, leaving the indemnitor to pay the costs of settlement and defense."[22] The Court also recognized that, although negligence could still be contested by the indemnitor, "such a result retards rather than advances the policy of preventing satellite litigation regarding interpretation of indemnity contracts."[23]

Based on the case law development in this area, Douglas does not have to obtain an express finding that SWEPCO was negligent in order to challenge the compliance of the agreement with the fair notice requirements. SWEPCO's argument is unpersuasive.

Finally, Douglas contends that the negligence for which SWEPCO seeks indemnification is outside the scope of the indemnification provision because the negligence alleged against SWEPCO in connection with the injuries sustained by the third-party employee were not related to and did not arise out of the performance of the lease agreement. Due to our determination that the indemnity provision fails for lack of conspicuousness, we need not reach this point.

In summary, we hold that the indemnity provision was not conspicuous and failed to meet the fair notice requirements, and thus was unenforceable as a matter of law. Furthermore, SWEPCO has failed to allege that Douglas Cablevision had actual knowledge of the indemnity agreement be-

---

18. *U.S. Rentals,* 901 S.W.2d at 793.

19. 797 S.W.2d 165 (Tex.App.—Corpus Christi 1990, writ denied).

20. 888 S.W.2d 813 (Tex.1994).

21. *Id.* at 814.

22. *Id.* at 815.

23. *Id.* at 815 n. 2.

fore entering into the contract. Therefore, SWEPCO is not entitled to a summary judgment.

The summary judgment granted to SWEPCO is reversed; Douglas's appeal of the trial court's refusal to grant it a summary judgment is granted; and a take-nothing judgment is rendered in favor of Douglas.