Opinion issued December 13, 2007












 





In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-06-00700-CV
  __________
 
REECE ALBERT, INC., Appellant
 
V.
 
CONTRACTOR’S SERVICE COMPANY, Appellee
 

 
 
On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2005-39133
 

 
 
MEMORANDUM OPINION
           In this contractual indemnity case, Reece Albert, Inc. (“Reece”) and
Contractor’s Service Company (“CSC”) filed cross-motions for summary judgment. 
In two issues, Reece appeals the trial court’s grant of CSC’s motion and contends that
(1) the trial court erred in ruling that the parties’ indemnity agreement is ambiguous,
and, thus, unenforceable, and (2) the words omitted from the “trigger” portion of the
indemnity agreement were the result of a scrivener’s error, which can be corrected
through the doctrine of reformation. We reverse. 
Background
          Reece and CSC entered into a contract, whereby CSC agreed to act as a
subcontractor for Reece on a road construction project in Nolan County, Texas. 
Under the contract, CSC was to provide signs, lights, and barricades and place them
on the roadway according to the specifications of the governing Traffic Control Plan. 
During the course of the project, an automobile accident occurred in the construction
area.
          James Neff, a driver involved in the collision, sued Reece and CSC, alleging
that the collision resulted from Reece’s and CSC’s failure to mark and maintain the
signs, barricades, and other traffic control devices in the construction area.


 Pursuant
to the indemnity agreement in the contract between them, Reece made a demand on
CSC for defense and indemnity, but CSC did not respond to the demand. Reece
incurred $30,704.70 in defense costs, and, after mediation, settled with Neff for
$32,500. 
          Reece sued CSC, alleging breach of contract and seeking declaratory relief
regarding CSC’s defense and indemnity obligations. The indemnity provision in
question, found in the subcontract between Reece and CSC, reads as follows: 
9.9 INDEMNIFICATION AND HOLD HARMLESS CLAUSE:
[CSC] assumes entire responsibility for any claim or actions based on or
arising out of injuries, including death, to persons or damages to or
destruction of property sustained or alleged to have been sustained in
connection with or to have arisen out of Reece Albert Inc., their agents
and employees, and their subcontractors, their agents and employees,
whether such claims or actions are founded in whole or in part upon
liability or any degree of alleged negligence, whether sole or concurrent,
of Reece Albert Inc. it’s [sic] representatives, or the employees, agents,
invitees, or licenses [sic] thereof. [CSC] further agrees to indemnify and
hold harmless Reece Albert Inc. And [sic] it’s [sic] representatives, and
the employees, agents, invitees and licensees thereof in respect of any
such matters and agrees to defend any claim or suit or action brought
against Reece Albert Inc., it’s [sic] representatives, and employees,
agents, invitees, and licensees thereof.

(Emphasis added.) The parties filed cross motions for summary judgment and
stipulated that the only questions for the trial court to answer were (1) whether the
indemnity “trigger” was ambiguous and, (2) if it was, whether such ambiguity
rendered the entire agreement unenforceable under the express negligence test. The
trial court found that the relevant “indemnity provision is ambiguous and therefore
unenforceable.” Reece appealed.
Summary Judgment
          A summary judgment movant has the burden of showing that there is no
genuine issue of material fact and that it is entitled to summary judgment as a matter
of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548
(Tex. 1985). A plaintiff moving for summary judgment on its claim must establish
its right to summary judgment by conclusively proving all the elements of its cause
of action as a matter of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999); Anglo-Dutch Petroleum Int’l, Inc. v. Haskell, 193 S.W.3d 87, 95 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied).
          When a defendant moves for summary judgment, it must either (1) disprove at
least one element of the plaintiff’s cause of action or (2) plead and conclusively
establish each essential element of its affirmative defense, thereby defeating the
plaintiff’s cause of action. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995);
Yazdchi v. Bank One, Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.—Houston [1st
Dist.] 2005, pet. denied). 
Ambiguity
          In two issues, Reece appeals the trial court’s grant of CSC’s motion and
contends that (1) the trial court erred in ruling that, as a matter of law, the parties’
indemnity agreement is ambiguous, and, thus, unenforceable and (2) the words
omitted from the trigger portion of the indemnity agreement were the result of a
scrivener’s error, which can be corrected through the doctrine of reformation. 
Despite raising multiple grounds for summary judgment in their motions, CSC and
Reece filed an agreed stipulation in this appeal that 
the only issues decided by the trial court and, therefore, the only issues
for this Court’s consideration upon appeal are whether the indemnity
trigger in the parties’ indemnity agreement (i.e., the portion of the
indemnity agreement that describes the circumstances under which CSC
owed indemnity) is ambiguous, and, if it is, whether such ambiguity
renders unenforceable the parties’ entire indemnity agreement under the
express negligence test.

The Law
          Because indemnity provisions seek to shift the risk of one party’s future
negligence to the other party, Texas imposes a fair notice requirement before
enforcing such agreements. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d
505, 508 (Tex. 1993). The fair notice requirements are embodied in the express
negligence doctrine and the conspicuousness requirement. Storage & Processors,
Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004). Under the express negligence
doctrine, an intent to indemnify one of the parties from the consequences of its own
negligence, “must be specifically stated in the four corners of the document.” Id.
(quoting Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 707 (Tex. 1987)). The
conspicuousness requirement mandates that “something must appear on the face of
the [contract] to attract the attention of a reasonable person when he looks at it.” Id.
(quoting Dresser, 853 S.W.2d at 508). Language is conspicuous if it appears in larger
type, contrasting colors, or otherwise calls attention to itself. Dresser, 853 S.W.2d
at 511; see also Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (Vernon Supp. 2007). 
Whether an agreement meets the conspicuous requirement is a question of law for the
court. Dresser, 853 S.W.2d at 509. An agreement that does not “satisfy either of the
fair notice requirements when they are imposed is unenforceable as a matter of law.” 
Reyes, 134 S.W.3d at 192. “However, if both contracting parties have actual
knowledge of the plan’s terms, an agreement can be enforced even if the fair notice
requirements were not satisfied.” Id.
          The express negligence requirement is not an affirmative defense, but a rule of
contract interpretation which is determinable as a matter of law. Fisk Elec. Co. v.
Constructors & Assocs., 888 S.W.2d 813, 814 (Tex. 1994). Such a determination
does not depend on the outcome of the underlying suit, but must be established as a
matter of law from the pleadings. Id. Therefore, the express negligence test may
properly be applied at the summary judgment stage of a proceeding. MAN GHH
Logistics GMBH v. Emscor, Inc., 858 S.W.2d 41, 43 (Tex. App.—Houston [14th
Dist.] 1993, no writ).
          Whether a contract is ambiguous is a question of law for the court. Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). If the contract is so
worded that it can be given a certain or definite legal meaning or interpretation, then
it is not ambiguous, and a court should construe the contract as a matter of law. SAS
Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005). We construe an
unambiguous contract according to the plain meaning of its express wording. Lyons
v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985). Unambiguous contracts are
enforced as written. Heritage Res., Inc., 939 S.W.2d at 121.
          “A contract is ambiguous when its meaning is uncertain and doubtful or is
reasonably susceptible to more than one interpretation.” Id. We determine whether
a contract is ambiguous by looking at the contract as a whole in light of the
circumstances present when the parties entered the contract. Universal Health Servs.,
Inc. v. Renaissance Women’s Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003). If a
contract is determined to be ambiguous, then a court may consider extraneous
evidence to ascertain the true meaning of the instrument. Nat’l Union Fire Ins. Co.
v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).
Analysis
          The crux of the parties’ dispute over the enforceability of the indemnity
provision is found in the italicized portion below.
[CSC] assumes entire responsibility for any claim or actions based on or
arising out of injuries, including death, to persons or damages to or
destruction of property sustained or alleged to have been sustained in
connection with or to have arisen out of Reece Albert Inc., their agents
and employees, and their subcontractors, their agents and employees,
whether such claims or actions are founded in whole or in part upon
liability or any degree of alleged negligence, whether sole or concurrent,
of Reece Albert Inc. it’s [sic] representatives, or the employees, agents,
invitees, or licenses [sic] thereof.

(Emphasis added.) CSC alleges that the entire indemnity provision is unenforceable
because the italicized portion of the provision that describes the circumstances under
which CSC’s indemnity obligation is triggered is “ambiguous and nonsensical.” CSC
argues that the indemnity agreement is so broad that it would require CSC to insure
Reece for “anything that could possibly happen during the massive road construction
project (or any other project for that matter, given Reece’s interpretation), even if
completely unrelated to any work provided by CSC or involving injuries to third-persons not even associated with CSC.” Further, CSC contends that we cannot
reform an ambiguous indemnity provision given that the Texas Supreme Court has
directed that “indemnity provisions that do not state the intent of the parties within
the four corners of the instrument are unenforceable as a matter of law.” Fisk, 888
S.W.2d at 814. We agree with CSC’s premise, but hold that the parties’ intent is
stated in the four corners of the instrument. 
          Reece concedes that “there are admittedly one or more words missing from the
quoted indemnity trigger that should appear right before the words ‘Reece Albert
Inc.’”—“sustained or alleged to have been sustained in connection with or to have
arisen out of Reece Albert Inc.”


 Nonetheless, it is clear, reviewing the entire
indemnity agreement, that the parties intended CSC to indemnify Reece for Reece’s
own negligence. The agreement expressly provides that CSC “assumes entire
responsibility for any claim or actions . . . whether such claims or actions are founded
in whole or in part upon liability or any degree of alleged negligence, whether sole
or concurrent, of Reece Albert Inc.”
          CSC argues that Reece erroneously attempts to “parse the indemnity agreement
into allegedly two separate and independent portions—the ambiguous indemnity
trigger and the indemnity undertaking.” We need not address this argument because,
while there may be a few words missing from the indemnity trigger, after considering
the contract as a whole and in light of the circumstances present when the parties
entered into the contract, its meaning is certain and is not reasonably susceptible to
more than one interpretation. See Universal Health Servs., 121 S.W.3d at 746.
          We hold that the missing words in the indemnity trigger are the result of a
scrivener’s error. This decision is supported by the number of typographical errors
found in the one-paragraph provision. We agree that the stated purpose of the express
negligence test is “to require scriveners to make it clear when the intent of the parties
is to exculpate an indemnitee for the indemnitee’s own negligence,” Fisk, 888 S.W.2d
815, and we hold that the intent was clearly stated in the provision. There is no
ambiguity in CSC’s obligation to indemnify Reece for Reece’s own negligence. 
Accordingly, we hold the trial court erred in finding the indemnity provision
ambiguous and unenforceable.
          Reformation is a proper remedy when the parties have reached a definite and
explicit agreement, understood in the same sense by both, but, by their mutual or
common mistake, the written contract fails to express this agreement. Champlin Oil
& Ref. Co. v. Chastain, 403 S.W.2d 376, 377 (Tex. 1965). Because the agreement
embodies the parties’ intent to apply the express negligence doctrine, but, due to a
scrivener’s error, leaves out a few words in the indemnity trigger, the matter must be
remanded to the trial court to reform the written contract to conform to the terms of
the agreement.
          We sustain issues one and two.
 
 
 
Conclusion
          We reverse the trial court’s judgment and remand the cause for the trial court
to reform the indemnity trigger in the agreement.
 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Hanks, and Higley.