

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00251-CV

---

MISSION CLAY PRODUCTS, LLC, APPELLANT

V.

L.A. FULLER & SONS CONSTRUCTION, LTD., APPELLEE

---

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 106,315-E-CV, Honorable Matthew H. Hand, Presiding

---

July 24, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Mission Clay Products, LLC seeks indemnity from Appellee, L.A. Fuller and Sons Construction, LTD, under their Credit Agreement. When a defective sewer pipe allegedly failed, the City of Amarillo sued both companies. Mission settled with the City, then sought indemnity from Fuller under their contract. The trial court granted summary judgment for Fuller, holding the indemnity clause unenforceable. We affirm.

## BACKGROUND

This suit arises from the design and construction of a sanitary sewer system for the City of Amarillo. This case began with a faulty sewer system. The City of Amarillo contracted with Brandt Engineers Group to design a sanitary sewer system and with Fuller to build it. As Brandt specified, Fuller installed vitrified clay pipe that Mission manufactured and sold. The pipe allegedly failed and had to be replaced.

Thereafter, the City sued Mission, Fuller, and Brandt. It alleged Mission was liable under theories of strict products liability, breach of warranty, negligence, and gross negligence. It charged Fuller with breach of contract, breach of express and implied warranties, and negligence.

Mission cross-claimed against Fuller for contractual indemnity under their Credit Agreement. The indemnity provision stated in relevant part:

> To the fullest extent permitted by law, [Fuller] agrees to defend, indemnify and hold harmless [Mission] from and against any claim or liability . . . caused by, arising out of, or in any way connected with the delivery, installation, or use of the product purchased from Seller, including the possession, use or resale of the products, or where the Seller may incur as a result of any act or failure to act by the Buyer, its officers, agents, or employees, successors or assignees, its customers or all other third parties, whether direct or indirect, whether or not caused in part by the active or passive negligence or other fault of Seller, provided, however, Buyer's duty hereunder shall not arise if the cause is Seller's sole negligence as determined by a court of law.

Mission settled with the City for an undisclosed amount. The City's other claims were dismissed, leaving only Mission's indemnity claim against Fuller.

2

Mission initially obtained a partial summary judgment on its indemnity claim. However, the trial court granted Fuller's motion for reconsideration and set aside that judgment. Fuller then moved for summary judgment, arguing the indemnity clause was unenforceable because it failed Texas's fair-notice requirements and violated the Statute of Frauds. The trial court agreed and granted final summary judgment for Fuller.

## ANALYSIS

Mission challenges the summary judgment on multiple grounds. It argues the indemnity provision satisfies the express-negligence doctrine and is sufficiently conspicuous. It claims Fuller had actual knowledge of the provision. It contends Fuller made a counteroffer that included the indemnity clause. And it argues the Statute of Frauds and other defenses lack merit.

The summary judgment standard and scope of review for a traditional motion are well-established and do not require restatement here. *See, e.g., Battles v. Anthony Inman Constr.,* 667 S.W.3d 477, 481 (Tex. App.—Amarillo 2023, no pet.) (citing *McNally v. McNally,* No. 02-18-00142-CV, 2020 Tex. App. LEXIS 7211, at *8–9 (Tex. App.—Fort Worth Sept. 3, 2020, pet. denied) (mem. op.)).

Texas imposes strict requirements before enforcing indemnity provisions. Because these clauses shift one party's future negligence risk to another, they must provide fair notice. *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993). Fair notice requires two things: conspicuousness and satisfaction of the express-negligence doctrine. *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 707–08 (Tex. 1987); *Dresser,* 853 S.W.2d at 508–09. Both requirements are mandatory. If an

3

indemnity provision fails either test, it is unenforceable. *U.S. Rentals, Inc. v. Mundy Serv. Corp.,* 901 S.W.2d 789, 792 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (op. on reh'g). Whether these requirements are met is a question of law. *Dresser*, 853 S.W.2d at 509.

(1) The Conspicuousness Requirement

Texas law requires that contractual provisions be "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." TEX. BUS. & COM. CODE ANN. § 1.201(b)(10). The words must "appear on the face of the contract to attract the attention of a reasonable person when he looks at it." *Dresser*, 853 S.W.2d at 508. We determine conspicuousness by examining how the language in question compares to other provisions in the same contract. *In re Key Equip. Fin. Inc.*, 371 S.W.3d 296, 301 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding).

The indemnity provision here fails this test. It appears on the final page of the four-page Credit Agreement among twenty different provisions. While the indemnity clause heading is capitalized and in bold font, so are eighteen other headings on the same page. Nothing distinguishes it from eighteen other provisions on the page.

One provision does stand out—the "DISCLAIMER OF WARRANTY" clause. Its heading appears in larger font and is underlined. Its text is larger, bold, and mostly capitalized. Extra spaces separate it visually from other provisions. The indemnity provision contains none of the features that distinguishes it from the rest of the text.

4

<u>(2) Similar Cases Demonstrate Lack of Conspicuousness</u>

Other courts have similarly held that indemnity provisions buried among similar clauses are not conspicuous:

- In *Mundy*, an indemnity provision on the back of a two-page contract was not conspicuous even though its heading was in all caps. It was the seventh of fifteen unrelated provisions with similar headings and type. 901 S.W.2d at 792 and n.6.

- In *J.C. Penney Purchasing Corp. v. Welco, Inc.,* a bold heading did not make an indemnity provision conspicuous when it was paragraph nine of twenty-seven paragraphs and all surrounding clauses had bold headings. 2014 U.S. Dist. LEXIS 166600, at *8–9 (E.D. Tex. 2014).

This case is similar. The indemnity provision is the tenth of twenty unrelated provisions. All have the same size headings and text—except for the warranty disclaimer, which stands out distinctively. Nothing draws attention to the indemnity clause.

Mission argues this case resembles *Enserch Corp. v. Parker*, where the court enforced an indemnity provision. 794 S.W.2d 2, 9 (Tex. 1990). But *Enserch* involved a one-page contract where the indemnity language appeared prominently on the front, "not surrounded by completely unrelated terms." *Id.* Here, the indemnity provision appears in small print on page four, surrounded by unrelated clauses that look identical.

Mission also cites *Dresser* for the propositions that (1) a printed heading in all capitals is conspicuous and (2) language in the body of an indemnity provision is conspicuous if it is of contrasting type or color. *See Dresser,* 853 S.W.2d at 511 (citing TEX. BUS. & COM. CODE ANN. § 1.201(10)). But the text of the indemnity provision is no larger than and is of the same type and color as every other provision (with the exception of the disclaimer-of-warranty provision, which has bold font and is capitalized) on the same page. Furthermore, as already noted, the capitalized heading is not conspicuous because all of the other headings on the same page are capitalized. Under these circumstances, nothing "on the face of the [indemnity provision] attract[s] the attention of a reasonable person when he looks at it." *See Dresser,* 853 S.W.2d at 508 (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n,* 482 S.W.2d 841, 843 (Tex.1972)).

We conclude the indemnity provision is inconspicuous as a matter of law.

<u>(3) The trial court correctly rejected application of the actual knowledge exception.</u>

Mission further argues that Fuller's actual knowledge of the indemnity provision avoids the conspicuousness requirement. The actual-knowledge exception to the conspicuousness requirement is in the form of an affirmative defense; therefore, the party relying on it assumes the burden of pleading and proof. *Storage & Processors, Inc. v. Reyes,* 134 S.W.3d 190, 194 (Tex. 2004) (citing *Dresser,* 853 S.W.2d at 508 n.2); *Mundy,* 901 S.W.2d at 793.

Mission never pleaded this exception in its cross-claim. It never raised the exception in its summary judgment response. While Mission's response mentioned that Mike Fuller revised the Credit Agreement and "could easily have seen the indemnity

6

provision," it never specifically invoked the actual-knowledge exception or cited supporting authority. We hold that this defense cannot be raised for the first time on appeal. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993) (holding that issues a nonmovant contends defeat summary judgment must be expressly presented in the response to the summary judgment motion); *Mundy,* 901 S.W.2d at 793–94 (holding that argument was not preserved); TEX. R. CIV. P. 166a(c).

Nevertheless, even if Mission had properly raised this defense, it failed to provide supporting evidence. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex. 1984) ("If the party opposing a summary judgment relies on an affirmative defense, [it] must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment."). "Actual knowledge can result from prior dealings of the parties or if the indemnitee specifically brings the inconspicuous waiver to the indemnitor's attention." *Deacero, S.A. P.I. de C.V. v. BNSF Ry. Co.,* 696 S.W.3d 212, 218 (Tex. App.—Houston [14th Dist.] 2024, pet. denied). However, Mission presented no evidence about the parties' course of dealings or that it called Fuller's attention to the indemnity provision. Fuller's handwritten changes were made to a different page than the one containing the indemnity clause. Evidence that someone read an agreement is not evidence they had knowledge about a different provision. *Am. Home Shield Corp. v. Lahorgue*, 201 S.W.3d 181, 186 (Tex. App.—Dallas 2006, pet. denied) ("To hold that reading the agreement is enough to by-pass the fair notice requirements would allow the exception to swallow the rule and render the fair notice requirements ineffectual in all but the most rare instances.").

In short, we hold that Mission failed to preserve this defense and failed to present evidence to support it.

(4) The Counteroffer Argument

Mission alternatively argues Fuller rejected the Credit Agreement by modifying it, creating a counteroffer that Mission accepted by performance. According to Mission, Fuller cannot claim ignorance of a provision in its own counteroffer, making the fair-notice requirement irrelevant.

However, again, Mission never raised this argument in its summary judgment response. Issues the nonmovant contends preclude summary judgment must be expressly presented in writing to the trial court. *McConnell*, 858 S.W.2d at 341; Tex. R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand,* 776 S.W.2d 551, 553 (Tex. 1989). We hold this argument is waived.

**CONCLUSION**

We conclude Fuller lacked fair notice of the indemnity provision because it was not conspicuous as a matter of law. It is unnecessary to discuss whether the express negligence doctrine is satisfied because an indemnity provision must meet both requirements of the fair notice standard. *Reyes,* 134 S.W.3d at 192; *Dresser,* 853 S.W.2d at 509–10; Tex. R. App. P. 47.1. The judgment of the trial court is affirmed.

Lawrence M. Doss
Justice

8