# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00149-CV

Thomas P. McDill, Jr., Appellant

v.

Overlook Estates Joint Venture, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-08-002141, HONORABLE SCOTT OZMUN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Thomas P. McDill, Jr., appeals pro se a final summary judgment on a counterclaim he had asserted against appellee Overlook Estates Joint Venture (Overlook) in a suit Overlook had initiated to enforce a settlement agreement. In a single issue, McDill disputes whether summary judgment was proper on any of the grounds presented in Overlook's motion. We will affirm the judgment.

## BACKGROUND

A predecessor to Overlook, Sun NLF Limited Partnership (Sun), was the record owner of twenty lots in the Overlook Estates subdivision in western Travis County. The record owner of two of the other lots in the subdivision was McDill's daughter, Shelly McDill a/k/a Shelly McDill Springer (Springer). In 2007, Sun undertook to develop a large tract that included the twenty lots to which it held record title. Alleging that he had made numerous uses of areas within

this tract while residing on and constructing improvements for Springer's two lots, McDill sued Sun in state court seeking a declaratory judgment that he had acquired title to those areas by adverse possession. Sun, a foreign limited partnership, answered and removed the lawsuit to federal court. Sun then asserted counterclaims for trespass-to-try-title, a declaratory judgment that McDill had no legal or equitable interest in the disputed property, and damages and injunctive relief to restrain McDill's trespass on the disputed property.

On September 27, 2007, following a mediation, McDill and Sun, as well as Springer, executed a "Memorandum of Agreement," also termed a "settlement agreement" within the instrument (the "Settlement Agreement").[1] The Settlement Agreement was also signed by counsel for McDill and Sun. The signatories agreed that, within 45 days of the agreement's execution, Springer was to convey her two lots to Sun, in exchange for Sun's payment of $305,000 jointly to Springer and McDill. They further agreed that, within 120 days of the agreement's execution, McDill had the right to remove his personal property from Springer's lots or other lots within the subdivision. After that deadline, any such property remaining on the premises would be considered abandoned and Sun or its successors would then have the unconditional right to use, remove, and/or dispose of it.

---

[1] Although the Settlement Agreement contemplated that the parties would "enter into comprehensive settlement documents before the Closing Date," the parties agreed that "failure to execute comprehensive settlement documents will not [a]ffect the finality or enforceability of this Memorandum of Agreement." There is no indication in the record that the parties ever executed any settlement papers other than the Settlement Agreement.

2

The Settlement Agreement also included the following release:

> The respective parties mutually release one another and their affiliated parents, partners, officers, employees, heirs, successors and assigns from all claims and causes of action which have been brought and could have been brought in the pending litigation, and any and all claims, known or unknown, from the beginning of time to the date of this agreement.

Further, within 10 days of the agreement's execution, McDill was to agree to the entry of a take-nothing judgment in the litigation and Sun would dismiss all of its claims against McDill with prejudice.

It happened that McDill was a professional engineer. In that capacity, he had, decades earlier, prepared a set of engineering plans for the Overlook Estates subdivision that had been approved by Travis County. As part of the settlement, the parties agreed that McDill would "cooperate and use his best efforts to assist Sun NLF and its successors in interest in any governmental approval process regarding the future development of The Overlook Estates, as reasonably requested by Sun NLF and its successors in interest for reasonable an[d] fair fees." McDill further agreed that "Sun NLF owns and may use the set of engineering plans related to the Overlook Estates prepared by McDill Engineering and sealed by Thomas P. McDill as approved on 9/26/1986 by Travis County."

On October 10, 2007, the federal district court entered an agreed judgment that McDill take nothing and that "all other claims brought in the above-entitled and styled case are hereby dismissed with prejudice." However, the closing on the sale of Springer's two lots did not go forward as had been contemplated in the Settlement Agreement. Likewise, disputes arose with

regard to whether McDill had complied with his duty to remove his personal property and was otherwise interfering with Sun's efforts to develop the property.

On June 4, 2008, Sun and Overlook entered into an Assignment and Assumption agreement whereby Sun assigned its interest in the Settlement Agreement to Overlook and Overlook assumed all of Sun's obligations under that agreement. Overlook acknowledged that "the McDill parties are in default" under the Settlement Agreement.

On June 19, 2008, Overlook sued McDill and Springer in Travis County district court alleging that Springer had failed to execute the appropriate documentation to transfer her interests in the two lots and that McDill had "failed to remove his personal property and refuse as required by the [Settlement] Agreement and has denied access after the expiration of the 120 day abandonment period." Overlook asserted a cause of action for breach of contract and sought specific performance and attorney's fees. McDill, who had been represented by counsel in the prior litigation, answered and appeared pro se.

Overlook filed a motion for summary judgment on its claim for specific performance of the Settlement Agreement. On December 9, 2008, the district court granted Overlook's motion, ordered McDill and Springer to comply with the Agreement's terms within 30 days, and awarded attorney's fees to Overlook. Three days later, Overlook filed a "Motion for Entry of Final Judgment" in which it abandoned a claim for costs and requested that the Court enter final judgment based on the summary-judgment order.

On December 15, McDill responded with two counterclaims against Overlook. First, he asserted a claim for injunctive relief "enjoining [Overlook] from proceeding with any

4

development or improvement to the property unless and until [it] has complied with and honored all prior subdivision commitments previously agreed to by [Overlook's] predecessor in title." McDill specifically complained that Overlook had failed to make what he characterized as required security deposits with governmental entities related to roads and/or had made "unauthorized" withdrawals of those deposits. Second, McDill asserted an unjust-enrichment claim for $85,000 in "engineering fees" reflecting the value of "approved construction plans for an 80 lot subdivision on the real property that is the subject of this action," which McDill alleged he had "provided to [Overlook's] predecessor in title."

Overlook filed a motion for summary judgment on McDill's counterclaims and for entry of final judgment. Overlook urged that the counterclaims were barred as a matter of law by res judicata and, relying on the Settlement Agreement, release and accord and satisfaction. Additionally, Overlook challenged McDill's standing to assert his counterclaim regarding alleged commitment to governmental entities. The district court granted Overlook's motion in full and rendered final judgment that McDill take nothing on his counterclaims. Further, based on its prior summary-judgment order, the district court rendered final judgment on Overlook's affirmative claims to enforce the Settlement Agreement.[2] McDill appealed.[3]

---

[2] The record also reflects that the district court subsequently entered a final permanent injunction compelling McDill to remove any of his personal property from the real property by April 12, 2009, and enjoining him thereafter from interfering with Overlook's disposal of any remaining personal property, interfering with Overlook's development of the real property, or entering onto the real property.

[3] Springer did not appeal.

5

**ANALYSIS**

In a single issue, McDill[4] urges that the district court erred in granting summary judgment as to his unjust-enrichment counterclaim to recover "engineering fees." McDill challenges each of the grounds that Overlook had presented for summary judgment on this counterclaim: (1) that this claim had been released in the Settlement Agreement, (2) accord and satisfaction, and (3) res judicata. McDill does not challenge the district court's summary judgment as to either Overlook's affirmative claim to enforce the Settlement Agreement or his counterclaim seeking to enjoin Overlook's development of the property.[5]

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. In determining whether there is a disputed material fact issue precluding summary judgment, we take as true proof favorable to the nonmovant, and we indulge

---

[4] *See* Tex. R. App. P. 38.9. Pro se litigants are held to the same standards as other litigants. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.").

[5] While McDill's notice of appeal indicated his intent "to appeal from all portions of the judgment," he has not presented an issue, argument, or authorities challenging any portions of the judgment other than the district court's summary-judgment ruling on his unjust-enrichment counterclaim. Consequently, as to those other portions of the judgment, McDill has presented nothing for our review. *See* Tex. R. App. P. 38.1(i), 44.1.

every reasonable inference and resolve any doubt in favor of the nonmovant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

As a movant seeking summary judgment against claims of a nonmovant based on affirmative defenses, Overlook had the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of at least one of those affirmative defenses. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex.1999); *Oram v. General Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex.1974) (per curiam)). Assuming Overlook met this burden, the burden shifted to McDill to file a timely written response presenting grounds for denying summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Grounds that McDill did not expressly present to the trial court by written response cannot be considered as grounds for reversal on appeal. Tex. R. Civ. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Overlook's motion must stand on its own merits, however, and thus McDill is not precluded from contending on appeal that the grounds presented in Overlook's motion were legally insufficient to entitle it to summary judgment. *Rhône-Poulenc*, 997 S.W.2d at 223 (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 678). Additionally, Overlook bears the burden on appeal of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.*

We need only address Overlook's grounds that rely on the Settlement Agreement. A release is an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately on the occurrence of a condition. *Dresser Indus., Inc. v. Page*

*Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993); *National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000). A release extinguishes a claim or cause of action and bars recovery on the released matter. *Dresser Indus.*, 853 S.W.2d at 508. To release a claim, "the releasing instrument must 'mention' the claim." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Any claims not "clearly within the subject matter" of the release are not discharged, even if those claims exist when the release is executed. *Id.* It is not necessary, however, for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate*, 20 S.W.3d at 698. Although releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims that arise in the future. *Id.*

A release is subject to the rules of construction governing contracts. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). Our primary objective in construing a written contract is to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). Contract terms are given their plain, ordinary, and generally accepted meanings, construing the contract as a whole in an effort to harmonize and give effect to all of its provisions. *Valence Operating Co.*, 164 S.W.3d at 662. If a contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous and is construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

In the counterclaim at issue, McDill pled:

> [McDill] provided to [Overlook's] predecessor in title approved construction plans for an 80 lot subdivision on the real property that is the subject of the action. [McDill] has not received compensation for such plans, and yet, [Overlook] and [Overlook's] predecessor in title have received the value of such plans. Said value is at least $85,000.00. [McDill] is owed $85,000.00 in engineering fees from [Overlook] for such plans. [Overlook] has been unjustly enriched at the expense of [McDill].

In support of its summary-judgment motion, Overlook relied on the Settlement Agreement, the parties' pleadings from McDill's 2007 lawsuit, and the parties' pleadings in the present cause. As Overlook acknowledges, the pleadings from McDill's 2007 lawsuit do not explicitly mention any claim for "engineering fees" or other compensation related to the plans McDill had prepared. Nonetheless, Overlook emphasizes that the release in the Settlement Agreement is not limited to claims that the parties had actually asserted in the 2007 litigation, but extends to "all claims and causes of action which have been brought and could have been brought in the pending litigation, and any and all claims, known or unknown, from the beginning of time to the date of this agreement."

Overlook also points out the Settlement Agreement elsewhere provides that "Thomas P. McDill agrees that SUN NLF owns and may use the set of engineering plans related to The Overlook Estates prepared by McDill Engineering and sealed by Thomas P. McDill as approved on 9/26/1986 by Travis County." In Overlook's view, this provision forecloses McDill's counterclaim for compensation for use of the plans because McDill agreed that Sun, not he, owned the plans and had the right to use them. And this provision, Overlook adds, reflects the parties'

9

express contemplation when executing the Settlement Agreement that McDill had claims to rights in the plans that were subject to the Agreement's release.

McDill insists that the Settlement Agreement's release did not extend to his counterclaim for "engineering fees." He emphasizes that the claims and defenses in his 2007 litigation were focused solely on title issues[6] (something Overlook does not dispute) and advances several arguments to address the Settlement Agreement's language providing that Sun owned the "engineering plans" and had the right to use them. First, McDill argues that this language stating that Sun owned and could use the plans does not foreclose or even address the issue of whether he has a right to *compensation* for Sun's ownership or use of the plans. He emphasizes the context in which the language appears in the Settlement Agreement. The language appears in the second sentence of the following two-sentence paragraph:

> Thomas P. McDill agrees to cooperate and use his best efforts to assist SUN NLF and its successors in interest in any governmental approval process regarding the future development of The Overlook Estates, as reasonably requested by SUN NLF and its successors in interest for reasonable an[d] fair fees. *Thomas P. McDill agrees that SUN NLF owns and may use the set of engineering plans related to The Overlook Estates prepared by McDill Engineering and sealed by Thomas P. McDill as approved on 9/26/1986 by Travis County.*

(Emphasis added.) McDill urges that the second sentence on which Overlook relies—"Thomas P. McDill agrees that SUN NLF owns and may use the set of engineering plans related to The Overlook Estates prepared by McDill Engineering . . . ."—addresses only ownership and use of the plans, not

---

[6] In addition to relying on the pleadings, McDill presented affidavits from himself and his counsel in the 2007 litigation in which each aver that the sole claims in that litigation concerned title to the disputed property, not any rights in engineering plans.

10

whether or how he is entitled to be compensated for their use. The issue of compensation, McDill reasons, is instead addressed in the first sentence—"Thomas P. McDill agrees to cooperate and use his best efforts to assist SUN NLF and its successors in interest in any governmental approval process regarding the future development of The Overlook Estates, as reasonably requested by SUN NLF and its successors in interest *for reasonable an[d] fair fees*." Reading these two sentences together, McDill explains, his agreement in the second sentence that "SUN NLF owns and may use the plans" was part of his performance of his obligation in the first sentence to "cooperate and use his best efforts to assist SUN NLF and its successors in any governmental approval process regarding the future development of The Overlook Estates, as reasonably requested by SUN NLF and its successors in interest." And the first sentence, McDill adds, entitles him to "reasonable an[d] fair fees" for this "cooperation" and "best efforts." Thus, rather than barring his claim to compensation for his plans or the use of them, McDill suggests, the Settlement Agreement actually provided that he was entitled to such compensation.

McDill's construction is inconsistent with the text of the provision. The first sentence imposes an obligation on McDill to provide assistance with governmental development-approval processes concerning the future development of the subdivision, for which he would receive "reasonable an[d] fair fees." This obligation is prospective in nature, operative upon the "reasonable request[]" of Sun or its successors. The second sentence, by contrast, declares that Sun *currently* "owns and may use the plans." Neither the first sentence of the paragraph nor any other provision of the Settlement Agreement provides for McDill to be compensated for his transfer of ownership or the subsequent use of the plans. And any claims by McDill to such compensation would fall

11

within the unambiguous language of the release, which extends to "all claims and causes of action which have been brought and *could have been brought in the pending litigation, and any and all claims, known or unknown, from the beginning of time to the date of this agreement*."

In urging that the first sentence of the paragraph entitles him to "reasonable an[d] fair fees" for agreeing to Sun's ownership and right to use the plans in the second sentence, McDill attempts to rely on extrinsic evidence of the parties' intent, including his own affidavit testimony regarding negotiations during the mediation. This testimony is not competent summary-judgment evidence. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) (discussing parol-evidence rule); *see also Rabe v. Dillard's, Inc.*, 214 S.W.3d 767, 769 (Tex. App.—Dallas 2007, no pet.) (holding evidence of statements made in compromise negotiations not competent summary-judgment evidence of duress in suit to enforce settlement agreement); Tex. R. Civ. P. 166(a)(f) (summary-judgment affidavits must set forth facts that would be admissible evidence).

In the alternative, McDill argues that a fact issue remains as to whether "the set of engineering plans related to The Overlook Estates prepared by McDill Engineering and sealed by Thomas P. McDill as approved on 9/26/1986 by Travis County" addressed in the Settlement Agreement is the same as the "approved construction plans for an 80 lot subdivision on the real property" that is the subject of his counterclaim. McDill stresses that while his counterclaim refers to "approved *construction* plans" for the subdivision, the Settlement Agreement refers to approved "*engineering* plans" for the subdivision. However, McDill did not raise this ground for denying summary judgment in his summary-judgment response. Tex. R. Civ. P. 166a(c);

12

*Clear Creek Basin Auth.*, 589 S.W.2d at 678.  Furthermore, in an affidavit McDill submitted with his supplemental summary-judgment response, he acknowledged that "the plans" at issue in his counterclaim were the same plans addressed during the mediation that yielded the Settlement Agreement.  McDill did not assert below or present evidence that he had generated some other "approved" set of plans concerning the subdivision other than the "the set of engineering plans related to The Overlook Estates prepared by McDill Engineering and sealed by Thomas P. McDill as approved on 9/26/1986 by Travis County" that are addressed in the Settlement Agreement.  Consequently, we reject McDill's contention that a fact issue remains on this point.

In the further alternative, McDill argues that regardless whether the Settlement Agreement bars any claim he had for compensation against *Sun* for ownership or use of the plans, his counterclaim is against *Overlook* and is independent of and unaffected by any release of his claim against Sun.  He emphasizes that Overlook was not a party to the 2007 litigation or the Settlement Agreement and that the Agreement's provision regarding Sun's ownership or right to use the "engineering plans," unlike other provisions in the Agreement, did not explicitly contemplate that Sun could assign its rights to successors, nor was there a "catch-all" provision explicitly providing that the Settlement Agreement inured to the parties' successors.  And even if Sun's rights in this regard could be validly assigned, McDill adds, the summary-judgment evidence, in his view, raises a fact issue as to whether Overlook, not Sun, had used the plans before Overlook was assigned Sun's rights under the Settlement Agreement.  Relatedly, McDill argues that his claim against Overlook arose after the Settlement Agreement was executed, such that, he contends, the claim would not have

13

been one that "could have been brought in the pending litigation" or that existed "from the beginning of time to the date of this agreement."

These arguments each fail because, again, the parties agreed in the Settlement Agreement that "SUN NLF owns and may use the set of engineering plans related to The Overlook Estates prepared by McDill Engineering and sealed by Thomas P. McDill . . ." and did not confer any continuing rights in McDill with respect to those plans. McDill's arguments presume the existence of continuing rights in the plans that the Settlement Agreement did not provide him. Having already agreed that Sun, not he, owned the plans and had the right to use them, McDill lacked any rights in the plans that he could enforce against Overlook regardless of whether Overlook used the plans before or after Sun assigned its rights under the Settlement Agreement.

Finally, McDill asserts that the Settlement Agreement was drafted by Sun's counsel and that we should therefore construe its terms against Sun. Leaving aside whether there is any summary-judgment evidence that Sun actually drafted the Agreement—and there is not—the rule of construction against the drafter applies only when a contract is ambiguous. *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). As demonstrated above, the portions of the Settlement Agreement at issue here are not ambiguous. *See Coker*, 650 S.W.2d at 393 (observing that the mere fact parties advance competing constructions of contractual language does not mean the contract is ambiguous).

We overrule McDill's issue.

14

**CONCLUSION**

We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: April 29, 2010