**Affirm and Opinion Filed August 20, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-00488-CV**
_____

**MONTGOMERY J. BENNETT, Appellant**
**V.**
**MATTHEW ZUCKER, Appellee**

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-19-12294**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Nowell

This case and its companion, No. 05-19-01455-CV, arise from the same underlying dispute but present discrete legal issues that resulted in separate judgments. Both cases arise from appellant Montgomery J. Bennett's allegations against appellee Matthew Zucker, an attorney in the law firm that represented Bennett's former wife in their divorce proceeding. Bennett contends that Zucker committed legal malpractice by disclosing Bennett's confidential information in the divorce proceeding. Zucker responds that Bennett signed a release of all claims when the divorce proceeding concluded. In this appeal, Bennett appeals the trial court's

summary judgment granting Zucker's requested declaratory judgment and award of attorney's fees in favor of Zucker. We affirm the trial court's judgment.

## BACKGROUND

Zucker was practicing law at Baker Botts L.L.P. when that firm represented Remington Holdings, LP in an acquisition project. Bennett was a part owner of Remington Holdings at the time. Bennett was also the CEO of Ashford, Inc., another entity involved in the transaction. Zucker worked on the transaction but never met or communicated with Bennett. The transaction was terminated on March 31, 2017.

In February 2017, Zucker left Baker Botts and moved to Wick Phillips Gould & Martin, LLP ("Wick Phillips").

On September 13, 2017, the Bennetts' divorce proceeding was filed in the 330th District Court of Dallas County. In March 2018, Wick Phillips undertook representation of Bennett's then-wife Marissa Bennett, joining David Hanschen, who was already serving as Marissa's attorney.

The Bennetts' divorce proceeding concluded with a vigorously-negotiated agreed decree on March 8, 2019. The decree included a release (the "Release"):

B. Release of All Claims by Montgomery J. Bennett:

**Montgomery J. Bennett,** for himself, his heirs, executors, assigns, agents, successors, attorneys, and all others claiming under him, agrees to and does hereby compromise, settle, release and forever discharge **Marissa A. Bennett,** her agents, servants, attorneys, legal representatives and employees, and any and all other persons, firms, organizations, or corporations in privity with **Marissa A. Bennett,** from any and all claims, demands, and causes of action, of whatever kind or character, whether in law or in equity, which it has now or may

–2–

have in the future, whether known or unknown, based upon any events that have occurred prior to the date the Court signs this Decree, including but not limited to the claims that have been or could have been asserted in the lawsuit. This release is to be construed as the broadest form of general release and includes all claims, whether known or unknown, based upon any events that have occurred prior to the date this Court signs this Decree. Notwithstanding the foregoing description of the scope of this release, nothing herein should be construed as releasing any obligation or duty undertaken in this Decree, and nothing herein should be construed as revoking any right created in this Decree.

The parties dispute when Bennett learned that Zucker was previously employed at Baker Botts but was now working at Wick Phillips. They agree, however, that Bennett was aware of that information before he signed the Release.

On June 13, 2019, Bennett filed a proceeding under civil procedure rule 202 in County Court at Law No. 5 of Dallas County. Alleging that Zucker "potentially shared confidential information . . . regarding Bennett" with the lawyers representing Marissa in the divorce, Bennett sought to depose Zucker, Hanschen, Jeffrey Hellberg, Jr., and Bryan Wick of Wick Phillips (the "202 Action").

On June 18, 2019, before the court made any ruling in the Rule 202 Action, Zucker filed a declaratory judgment action in the 330th Judicial District Court of Dallas County, the court that had rendered judgment in the Bennetts' divorce (the "Dec Action"). Zucker sought a declaration that Bennett had released any claim he had against Zucker. Specifically, Zucker requested "a declaration of the rights and scope of the Release agreed to by [Bennett] that is contained in the Agreed Final

Decree of Divorce signed by [Bennett] on March 5, 2019 and entered by the Court on March 8, 2019."

On July 30, 2019, Bennett filed a "First Amended Petition" in County Court at Law No. 5 under the same cause number as his rule 202 proceeding against Zucker (the "Malpractice Action").[1] He alleged that "[a]s a result of the attorney-client relationship, ZUCKER had and has confidential and detailed knowledge of BENNETT'S assets, how BENNETT'S businesses are structured, different entities BENNETT controls, etc." By orders of August 21 and 28, 2019, the Malpractice Action was transferred to the 330th District Court "for all further proceedings." The Malpractice Action was not consolidated with the Dec Action already pending in that court, however.

After Bennett filed his answer in the Dec Action, Zucker filed a motion for summary judgment seeking a declaration that the Bennetts' final decree of divorce "contains a release of all claims against him that existed on or before March 5, 2019" and attorney's fees. The trial court granted Zucker's motion for summary judgment in the Dec Action on October 3, 2019. The trial court declared that the Release contained in the Bennetts' divorce decree "operates as a bar to any and all claims, known or unknown" that Bennett may have against Zucker for conduct occurring

---

[1] The 202 Action includes the proceedings in the action brought by Bennett that occurred before July 30, 2019. After Bennett filed the First Amended Petition on July 30, 2019, the action became the Malpractice Action.

prior to March 8, 2019, the date of the Release. The parties then proceeded to a jury trial on the issue of Zucker's request for attorney's fees.  In this appeal, Bennett appeals the final judgment in the Dec Action.

## ISSUES

In four issues, Bennett contends the trial court erred by (1) exercising jurisdiction over the Dec Action and the judgment rendered is void; (2) granting declaratory relief, including attorney's fees; (3) granting Zucker's motion for summary judgment; and (4) awarding Zucker attorney's fees.

## STANDARDS OF REVIEW AND APPLICABLE LAW

### A.     Jurisdiction

In his first issue, Bennett argues the trial court erred by exercising jurisdiction over the Dec Action because the 202 Action, which he describes as his "mere contemplation or mere investigation of a possible claim," could not satisfy the justiciable controversy requirement to establish the trial court's jurisdiction. Whether a court has jurisdiction is a question of law that we review de novo.  *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020).  For a court to have subject matter jurisdiction over a case, the plaintiff's claims must be ripe. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020).  Ripeness is a threshold issue that "emphasizes the need for a concrete injury for a justiciable claim to be presented."  *Id.*; *see also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) ("While standing focuses on the issue of *who* may bring an action,

ripeness focuses on *when* that action may be brought."). When determining whether a case is ripe, the focus is on whether "the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Lynch*, 595 S.W.3d at 683 (internal quotation marks and citations omitted). If the plaintiff's claimed injury is based on "hypothetical facts, or upon events that have not yet come to pass," then the case is not ripe, and the court lacks subject matter jurisdiction. *Id.*

A plaintiff bringing suit under the Uniform Declaratory Judgments Act ("UDJA") must properly invoke the trial court's subject matter jurisdiction. *Id.* at 683–84 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (citations omitted) (the UDJA is a "procedural device for deciding cases already within a court's jurisdiction" and does not permit courts to render advisory opinions)). When determining whether a suit for a declaratory judgment presents a court with a ripe controversy, "the declaration sought must actually resolve the controversy." *Id.* at 685. "A plaintiff may very well present a court with a justiciable controversy when the plaintiff asserts that a live controversy exists and harm will occur if the controversy is left unresolved." *Id.*

The present dispute began when Bennett filed the 202 Action alleging Zucker "potentially shared confidential information . . . regarding Bennett" with the Wick Phillips lawyers who were representing Marissa in the divorce, and Bennett sought to depose Zucker and others. Zucker then filed the Dec Action seeking a declaration

of the rights and scope of the Release. When Zucker filed the Dec Action, a real and substantial controversy existed about whether the Release barred any claim Bennett was investigating and considering asserting against Zucker for conduct occurring before March 8, 2019. That "dispute [was] not merely academic or theoretical"; rather, once Bennett filed the 202 Action, the "controversy involve[d] a genuine conflict of tangible interests." *See id.* at 685, 686 (internal quotation marks omitted). By seeking a declaration regarding the Release, Zucker sought to resolve the controversy that Bennett identified. "When such a controversy exists, and a declaration of the parties' rights will terminate the controversy between the parties or otherwise serve a useful purpose, the remedy is available to the court." *Allstate Ins. Co. v. Irwin*, No. 19-0885, 2021 WL 2021446, at *6 (Tex. May 21, 2021). The declaration requested would terminate the controversy between the parties. We conclude the trial court properly exercised jurisdiction over the Dec Action when it was filed. We overrule Bennett's first issue.

### B. Declaratory Judgment for a Tort Claim

In his second issue, Bennett asserts the UDJA does not allow a party to file a strategic lawsuit seeking a declaration of non-liability in tort, as Zucker did. Bennett argues Zucker asked the court for a declaration that Zucker could not be held liable to Bennett for all claims, which included a potential tort claim. Further, to the extent the declaratory relief sought could be treated as construing a contract, the UDJA does not permit recovery of attorney's fees for such a filing.

The UDJA gives Texas courts the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a). Among other instances in which a declaratory judgment would be proper, an interested person under a written contract or other writing constituting a contract or whose rights, status, or other legal relations are affected by a contract "may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). A release is a contract and subject to the same rules of construction. *See Headington Royalty, Inc. v. Finley Res., Inc.*, 623 S.W.3d 480, 490 (Tex. App.—Dallas 2021, no pet. h.). The Act's "purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b). "[I]t is to be liberally construed and administered." *Id.*

Bennett's 202 Action sought to investigate potential claims of professional misconduct, which are potential tort claims. However, in the Dec Action, Zucker sought a declaration of the parties' rights under a contract, the Release, and did not seek a determination of his potential tort liability. Zucker's request for declaratory relief was not a disguised attempt to seek a determination of non-liability in tort, a disguised breach-of-contract claim, or some preliminary phase of such a claim. *See Irwin*, 2021 WL 2021446, at *6; *see also Stark v. Benckenstein*, 156 S.W.3d 112,

–8–

117 (Tex. App.—Beaumont 2004, pet. denied) (potential defendant may not use declaratory judgment action to determine potential tort liability). Rather it was a remedy unto itself. The result of Zucker's requested declaration may have been that Bennett would not be successful in pursuing a tort claim against him, but that effect does not transform the nature of the Dec Action.

Because Zucker sought a judicial determination of his rights under the Release, a contract, and Zucker did not seek a determination of non-liability in tort, we conclude the Dec Action fell within the confines of the UDJA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). Further, the trial court acted within its discretion to award costs and attorney's fees. *See id.* § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). We overrule Bennett's second issue.

### C.  Summary Judgment

In his third issue, Bennett argues the trial court erred by granting Zucker's motion for summary judgment for several reasons. A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. When reviewing the grant of summary judgment, we must credit evidence favoring the non-movant, indulging

–9–

every reasonable inference and resolving all doubts in his favor. *Id.* "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). We review an order granting summary judgment de novo. *Lujan*, 555 S.W.3d at 84.

### 1.  *Evidentiary Challenge*

Bennett argues the trial court abused its discretion by striking an affidavit from Katherine Eberhardt, the custodian of records for one of Bennett's entities, which was attached to Bennett's summary judgment response. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *El-Rayes v. Lee*, No. 05-19-00881-CV, 2020 WL 7767939, at *2 (Tex. App.—Dallas Dec. 30, 2020, no pet.) (mem. op.) (citing *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam)). To reverse an erroneous evidentiary ruling, an appellant must establish error and show the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1; *Thawer v. Comm'n for Lawyer Discipline*, 523 S.W.3d 177, 183 (Tex. App.—Dallas 2017, no pet.); *El-Rayes*, 2020 WL 7767939, at *2.

While asserting the exclusion of evidence was erroneous, Bennett makes no argument that the complained-of error probably caused an improper judgment. Thus, even if we assume the trial court abused its discretion by striking Eberhardt's affidavit, we will not reverse the trial court's judgment on that basis because Bennett has not met his burden to establish any error probably caused the rendition of an improper judgment. We overrule Bennett's third issue to this extent.

## 2. Documents on File

Bennett argues the motion for summary judgment must fail because the Release was not physically attached to Zucker's motion for summary judgment and, therefore, is not part of the summary judgment record. Zucker moved for summary judgment on the ground that he was entitled to a declaration that the Bennetts' divorce decree contains a release of all claims against him that existed on or before March 5, 2019. In his motion, under the heading "Summary Judgment Evidence," Zucker lists two pieces of evidence supporting his motion: (1) a declaration from Jeffrey Hellberg, and (2) the "Agreed Final Decree of Divorce entered on March 8, 2019, in cause no. DF-17-18394, in the 330th District Court, Dallas County, Texas, styled *In the Matter of the Marriage of Marissa A. Bennett and Montgomery J. Bennett.*" Footnote 1 follows the listing of the divorce decree and states:

> The Agreed Final Decree of Divorce (with the release language at pages 56-57) is subject to a sealing order. Obviously, [Bennett] is aware of and has possession of a copy, as he was a party to the case and executed the document. [Zucker] will provide a duplicate copy to [Bennett's] new counsel immediately upon request. In all events, for the purpose of this Motion, [Zucker] requests that the Court take judicial notice of this Court's prior Agreed Decree of Divorce in that case and unseal the relevant pages of that document for the purpose of including a copy in the record of this proceeding pursuant to Tex. R. Civ. P. 166a(c)(ii). See Exhibit B attached hereto for proposed Order.

On August 20, 2019, after filing his motion for summary judgment, Zucker filed a motion for the trial court to take judicial notice of and unseal specific pages of the divorce decree so Zucker could present those pages to the court and protect the appellate record. The motion states that on March 8, 2019, the same trial court

–11–

entered the Agreed Final Decree of Divorce and provided the style of that case. Within the divorce decree is the Release. The motion states that "[w]hile the Final Decree is subject to an order sealing [sic], the parties have possession of the Final Decree because [Bennett] was a party to the Final Decree and Mr. Zucker's law firm represented [Marissa] in the divorce proceedings. . . . A copy will be provided to the Court at the hearing."

On August 21, 2019, the trial court entered an order unsealing specific pages of the divorce decree, including the pages containing the Release; the trial court attached the unsealed pages to its order. A hearing was held the same day on a different matter. At that hearing, the topic of the sealed decree arose. When Bennett's counsel mentioned the Release and the sealed divorce decree, the trial court judge responded: "[T]he Court has reviewed the entirety of the file. There was an agreement by the parties. It was simply a prove-up by a district judge."

In his response to the motion for summary judgment, which he filed after the trial court unsealed the Release, Bennett stated he "objects to unsealing an unspecific portion of the Agreed Final Decree of Divorce as requested by Zucker. Bennett does not object to the Court reviewing the Agreed Final Decree of Divorce *in camera*."

At the hearing on the summary judgment motion, Bennett complained that the Release was not in the record. Zucker reminded the trial court that it unsealed portions of the divorce decree for use in this proceeding and the Release was attached to the court's order. The judge then stated: "It is attached to the order as submitted

to the Court for entry. . . The Court took judicial notice of the same. The Court can review and consider the entirety of the record." The hearing on the summary judgment motion continued and counsel for Bennett discussed the Release language. The judge read some of the Release language aloud during the hearing. The parties proceeded to argue about the Release language and whether Bennett released claims against Zucker.

Rule 166a requires a trial court to grant summary judgment if the evidence and pleadings "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court," establish that the movant is "entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *see also Lance v. Robinson*, 543 S.W.3d 723, 732–33 (Tex. 2018); *Care Tecture, LLC v. Matheson Commercial Properties, LLC*, No. 05-19-00991-CV, 2020 WL 3529517, at *1 (Tex. App.— Dallas June 30, 2020, no pet.) (mem. op.).

The trial court's order unsealed the Release and the court attached the Release to its order before the summary judgment hearing. Under these facts, we conclude the Release was on file with the court at the time of the summary judgment hearing and it was referenced in the motion; therefore, it qualified as proper summary judgment evidence. *See Care Tecture*, 2020 WL 3529517, at *1 (citing *Lance*, 543 S.W.3d at 733 & n.8).

Bennett also argues the motion for summary judgment fails because Zucker was required to present the entire divorce decree to the trial court because the Release must be construed with the decree itself.

The record shows the trial court was familiar with the entire file from the divorce, which occurred in the same court only months before, and opted to unseal limited portions of the divorce decree. The trial court's order unsealing specific pages of the divorce decree indicates the decree was in its file. Bennett never claimed the trial court did not have the entire divorce decree and Bennett appears to have acknowledged the entire decree was in the trial court's file by agreeing to an in camera review of the decree. Further, although Zucker stated in his motion for summary judgment that the divorce decree was one of the pieces supporting his motion, Bennett did not object that the decree was not available to the trial court. Based on this record, we conclude the divorce decree was on file with the court at the time of the summary judgment hearing and it was referenced in the motion; therefore, it qualified as proper summary judgment evidence. *See Care Tecture,* 2020 WL 3529517, at *1 (citing *Lance*, 543 S.W.3d at 733 & n.8). Because the entire divorce decree was on file with the trial court, to the extent Zucker was required to provide the entire decree to the trial court, he satisfied that requirement. We overrule Bennett's third issue to this extent.

### 3. *"Specific Grounds" Supporting the Requested Relief*

Bennett argues the motion for summary judgment fails to identify "the specific grounds" supporting the requested relief and merely jumps to the requested result: a declaration that the Release bars all claims. Specifically, Bennett claims the motion fails because it does not quote or attach the Release or identify any specific language that would (a) make the clause applicable to Zucker or (b) identify the scope of claims addressed.

A motion for summary judgment must state the specific grounds upon which judgment is sought, and it stands or falls on those grounds alone. TEX. R. CIV. P. 166a(c); *AIX Specialty Ins. Co. v. Shiwach*, No. 05-18-01050-CV, 2019 WL 6888515, at *4 (Tex. App.—Dallas Dec. 18, 2019, pet. denied) (mem. op.) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339–41 (Tex. 1993) (plurality opinion)). Like the fair notice pleading requirement, specificity in a motion for summary judgment serves "to provide the nonmovant with adequate information to oppose the motion and to define the issues." *Shiwach*, 2019 WL 6888515, at *4 (quoting *Hevey v. Hundley*, No. 05-12-00588-CV, 2013 WL 5782924, at *2 (Tex. App.—Dallas Oct. 25, 2013, pet. denied) (mem. op.) ("If the motion contains a concise statement that provides fair notice of the claim involved to the nonmovant, the grounds for summary judgment are sufficiently specific.")). Special exceptions to a summary judgment may be filed when the summary judgment grounds are unclear. *Bryant v. Progressive County Mut. Ins. Co.*, No. 05-17-01023-CV, 2018

–15–

WL 6521853, at *2 (Tex. App.—Dallas Dec. 12, 2018, no pet.) (mem. op.) (citing *McConnell*, 858 S.W.2d at 342) (Tex. 1993).

The basis for Zucker's summary judgment motion is that the Bennetts' divorce decree "contains a release of all claims against [Zucker] that existed on or before" the date the divorce decree was entered. The motion further states the evidence in support includes the Bennetts' divorce decree, followed by Footnote 1 requesting the court take judicial notice of and unseal specific pages of the decree "for the purpose of including a copy in the record of this proceeding pursuant to" rule 166a. The motion argues the Release precludes Bennett from "pursuing *any* claim and/or seeking *any* relief against Mr. Zucker, and releases him (along with other attorneys at Wick Phillips) from any liability for any claim, known or unknown, accruing prior to entry of the Agreed Final Decree of Divorce." This statement also is followed by a footnote requesting the trial court unseal specific pages of the decree. The motion then requests: "this Court should declare that the Release operates as a complete bar to any and all claims, known or unknown, that Respondent may have against Mr. Zucker, for any alleged conduct occurring prior to March 8, 2019."

In his summary judgment response, Bennett states: "Zucker erroneously argues that Bennett agreed to release any future claims against Zucker as part of Bennett's release of his ex-wife 'Marissa A. Bennett, her agents, servants, attorneys, legal representatives and employees, and any and all other persons, firms,

–16–

organizations, or corporations in privity with Marissa A. Bennett'" as part of the divorce decree. Bennett's response then argues the Release is not sufficiently specific to discharge claims against Zucker.

Considering the content of Zucker's motion and Bennett's response, we conclude Zucker's motion adequately provided Bennett with information necessary to oppose the motion and define the issues. Bennett does not assert he lacked sufficient information and, if he did, then it was incumbent upon him to file special exceptions, which he did not do. Bennett's substantive response to the motion and quotation of language from the Release supports our conclusion. We overrule Bennett's third issue to this extent.

### 4. Release Supports Relief Granted

Bennett argues the Release does not support the relief granted because (a) Zucker cannot be said to be a party identified by the Release as a matter of law, and (b) the claims and causes of action cannot be said to fall within the Release as a matter of law (Zucker failed to establish that malpractice claims are within the scope of the Release as a matter of law).

A release surrenders legal rights or obligations between the parties pursuant to an agreement. *Headington Royalty*, 623 S.W.3d at 490 (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)). A release operates to extinguish or forfeit a party's claim or claims as effectively as would a prior judgment between the parties and is a bar to any right of action on the released

–17–

matter. *Id*. (citing *Dresser Indus.*, 853 S.W.2d at 508). A release is a contract and must be construed as such. *Id.*

### a. Zucker is Described with Sufficient Particularity

A release applies to a party that is either specifically identified in the release or described with sufficient particularity. *Id.* at 491 (citing *Schomburg v. TRW Vehicle Safety Sys., Inc.*, 242 S.W.3d 911, 913 (Tex. App.—Dallas 2008, pet. denied)). The specific identification requirement for a release is met if "a stranger could readily identify the released party." *Id.* (quoting *Ambrosio v. EPS Wireless, Inc.*, No. 05-99-01442-CV, 2000 WL 1160696, at *3 (Tex. App.—Dallas Aug. 18, 2000, no pet.) (not designated for publication)). "We construe a release in light of the facts and circumstances surrounding its execution." *Id.* at 490 (citing *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex. 1991)).

Bennett agreed to release "**Marissa A. Bennett,** her agents, servants, attorneys, legal representatives and employees, and any and all other persons, firms, organizations, or corporations in privity with **Marissa A. Bennett**…" The Release was signed as part of the divorce decree that resolved the Bennetts' divorce. The Release does not identify Zucker by name; instead, it identifies specific groups of persons and entities who are released. Zucker's summary judgment evidence included two declarations from Jeffrey Hellberg, an attorney with Wick Phillips. In the first, Hellberg states Wick Phillips was engaged in March 2018 to represent

–18–

Marissa in the divorce case. Attached to Hellberg's declaration is an email dated March 21, 2018, in which he transmitted the engagement agreement between Marissa and Wick Phillips to Bennett's counsel. The engagement agreement states in part that Marissa retained Wick Phillips to represent her in the divorce proceeding.

In a separate declaration, Hellberg states that counsel for Bennett took Marissa's deposition at Wick Phillips's Dallas office on March 21, 2018. During the deposition, Bennett's counsel told Hellberg he noticed the nameplate on the office door belonging to Zucker, which was next to the conference room where the deposition occurred. Bennett's counsel stated he knew Zucker from when Zucker worked at Baker Botts. Zucker became a Partner at Wick Phillips in February 2017. "[A]t all times during the Divorce Proceeding his biographical information was available on the Wick Phillips web page for all to see." On March 4, 2019, the parties attended mediation, which took place in Wick Phillips's office. Bennett's counsel attended the mediation and had a conversation with Zucker. The mediation ended on March 5 when the parties executed the Mediated Settlement Agreement, which included a copy of the proposed Agreed Final Decree of Divorce.

However, Bennett's response to the motion for summary judgment includes an affidavit from his counsel in which he avers he did not tell Hellberg he noticed Zucker's nameplate on his office door, he did not tell Hellberg he knew Zucker from

the time when Zucker worked for Baker Botts, and Hellberg did not tell him that Zucker worked for Wick Phillips.

The uncontested evidence shows Bennett's counsel attended Marissa's deposition and, when Bennett's counsel attended mediation at Wick Phillips on March 4, 2019, he had a conversation with Zucker. Zucker's biographical information was available on Wick Phillips's web page at that time. We conclude Bennett's counsel knew Zucker was an attorney at Wick Phillips before Bennett signed the Release. Bennett's counsel even had a conversation with Zucker in Wick Phillips's office. We impute the knowledge of Bennett's lawyer acquired during the representation to Bennett. *See Austin v. Mitchell*, No. 05-19-01359-CV, 2021 WL 2327870, at *4 (Tex. App.—Dallas June 8, 2021, no pet. h.) (mem. op.) ("Like other agents, an attorney's knowledge acquired during his or her representation of a client is imputed to the client.") (citing *McMahan v. Greenwood*, 108 S.W.3d 467, 480–81 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Thus, Bennett knew Wick Phillips represented Marissa and Zucker was an attorney at Wick Phillips. The Release specifically releases Marissa's attorneys. Accordingly, broadly construing the Release as it instructs us to do, we conclude the Release describes Zucker with

sufficient particularity that he is included within a category of Released persons. We overrule Bennett's third issue to this extent.

### b. Malpractice Claims are Within Scope of Release

Bennett also argues Zucker failed to establish the malpractice claims are within the scope of the Release. "In order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released. Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged." *Headington Royalty*, 623 S.W.3d at 491 (quoting *Brady*, 811 S.W.2d at 938). However, this standard does not require the parties identify each potential cause of action subject to release. *Gharavi v. Khademazad*, No. 05-20-00083-CV, 2021 WL 763761, at *2 (Tex. App.—Dallas Feb. 26, 2021, no pet.) (mem. op.) (citing *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000)).

Bennett agreed to release "any and all claims, demands, and causes of action, of whatever kind or character, whether in law or in equity, which it has now or may have in the future, whether known or unknown, based upon any events that have occurred prior to the date the Court signs this Decree, including but not limited to the claims that have been or could have been asserted in the lawsuit," namely the Bennett's divorce. The alleged malpractice about which Bennett complains occurred before Bennett entered into the agreed divorce decree and any conflict by Zucker arising from his previous work at Baker Botts could have been raised in the divorce

–21–

proceeding. Had Bennett intended to pursue a claim against Zucker, he was free to negotiate for the inclusion of a provision allowing him to do so, but he did not. Accordingly, broadly construing the Release as it instructs us to do, we conclude Bennett's claims against Zucker, which allegedly arose out of the divorce case and occurred prior to the date the trial court signed the decree, are mentioned in the Release and clearly fall within the subject matter of the Release. We overrule Bennett's third issue to this extent.

### D. Attorney's Fees

Finally, in his fourth issue, Bennett argues the trial court abused its discretion because the fees awarded to Zucker were neither reasonable and necessary nor equitable and just. Within this second point, Bennett asserts the evidence of fees includes amounts that are not recoverable and is legally insufficient.

The UDJA provides the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The reasonable and necessary requirements are questions of fact to be determined by the factfinder, but the equitable and just requirements are questions of law for the trial court to decide. *Ridge Oil Co., Inc. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 161 (Tex. 2004).

### 1. *Factual Background*

After granting Zucker's motion for summary judgment, Bennett requested a jury trial on the sole remaining issue in the case: attorney's fees. At trial, Hellberg

testified on behalf of Zucker.  In addition to discussing his qualifications to testify about attorney's fees, Hellberg described the proceedings between Zucker and Bennett, including the 202 Action, Malpractice Action, and Dec Action, to the jury. He also explained the fee invoices from his firm and David Hanschen's firm, which were admitted as exhibits, and explained the invoices reflect which services were provided on which dates by which timekeepers and the billing rate for each timekeeper.  Hellberg testified the attorneys' billing rates were reasonable and customary within the Dallas legal community, and he gave examples of other practitioners and their billing rates.

When Hellberg represented Marissa in the divorce case, he learned Bennett is "an active litigator" who takes "an outspend to submission type strategy."  To counter Bennett's litigation strategy in the Dec Action, Hellberg needed senior, experienced lawyers; using junior, less expensive lawyers would not have benefited Zucker.  Hellberg testified Zucker's strategy in the Dec Action was to file the motion for summary judgment the day after Bennett filed his answer so they could "basically end it as quickly as we could" and minimize fees.  The strategy was unsuccessful.

During Hellberg's testimony, a summary exhibit of the attorney's fee invoices was admitted as Exhibit 1. Exhibit 1 divides Zucker's attorney's fees into three buckets: (1) the fees incurred through filing Zucker's motion for summary judgment on August 6, 2019, totaled $22,870.00; (2) the fees incurred from filing the motion for summary judgment until the summary judgment hearing on October 3, 2019,

totaled $75,552.00; and (3) the fees incurred between October 3 and trial totaled $162,853.50. Hellberg testified that if the case had proceeded as cases normally do after a motion for summary judgment is filed, then Zucker's fees would have been approximately $32,870 to $37,870. However, this case did not follow a usual progression. Hellberg explained.

Zucker filed his motion for summary judgment on August 6. Ten days later, Bennett filed an emergency motion seeking a continuance to obtain discovery, including Zucker's deposition. Bennett deposed Zucker on August 30, 2019. On September 5, Bennett filed a motion for sanctions.[2] On September 9, Bennett filed a motion to compel discovery and a second motion for sanctions. The following day, Bennett noticed six depositions: three to occur on September 13 and three to occur on September 19. Of these six depositions, one was of Marissa who had no connection to the Dec Action and two were for lawyers who had not worked on the Dec Action. Without explanation, Bennett and his lawyers failed to appear for the depositions on September 13.[3] Instead, on September 13, Bennett filed another motion for continuance and sought four more depositions, including another deposition of Zucker and depositions of Hellberg, Hanschen, and Marissa. Bennett's

---

[2] Zucker's Exhibit 14 admitted at trial shows Bennett filed a motion for sanctions on September 5, and Hellberg testified that motion was filed. That motion does not appear in our clerk's record.

[3] The failure to appear was addressed briefly at the summary judgment hearing. When Zucker's counsel mentioned that Bennett's counsel failed to appear, Bennett's counsel explained they did not appear because Zucker filed a motion to quash; Zucker's counsel denied filing the motion. The trial court judge looked "through the Court's registry . . . I do not see a Motion to Quash."

motion stated the requested discovery was material to his response to the motion for summary judgment. Bennett filed his response to the motion for summary judgment on September 23, 2019; his response did not rely on any of the discovery he requested during the preceding month, including information from Zucker's deposition that Bennett had insisted he needed before he could file a response. The following day, Bennett filed a third motion for sanctions. Bennett's three motions for sanctions were unsuccessful.

If the case had been resolved after the summary judgment hearing, Zucker's attorney's fees would have been approximately $113,422. However, after the summary judgment was granted, Bennett's lawyers took additional actions to increase costs. On November 13, 2019, Bennett noticed depositions of eight attorneys. Three of those eight lawyers spent a combined three or four hours on the matter. Rather than preparing those lawyers for depositions, Hellberg agreed not to attempt to recover their fees. Hellberg testified: "I didn't think it was appropriate to spend whatever it costs . . . to prepare for and present them for their deposition [sic] just to try to recover the $2,000 worth of time." Another one of the lawyers spent no time on the Dec Action and, Hellberg speculated, his deposition was noticed for the purpose of harassment. Hellberg explained he has never asked to depose every timekeeper on a case when attorney's fees are an issue because it is unnecessary. "[I]f you're going to depose anyone you depose the person that is the expert. You don't go take a deposition of every person that touched the file unless you're trying

to increase the costs." The trial court eventually ordered four additional depositions, which Zucker's counsel had to prepare for and participate in. In December 2019, Bennett's lawyers sought additional discovery to which Zucker responded. Later that month, Bennett noticed a deposition on written questions on Wick Phillips.

Seven days before the original trial date, Zucker provided his witness list listing Hellberg as his only witness; Zucker also provided an exhibit list with fourteen exhibits. Bennett listed nine witnesses, including all timekeepers, and disclosed 273 exhibits. Hellberg explained how a large exhibit list, such as Bennett's, increases fees.

When, as here, the only remaining issue in a case is attorney's fees, there are four methods for resolving the dispute according to Hellberg. He discussed them from the least expensive to the most: (1) the parties agree and stipulate to the fees; (2) the parties submit affidavits with exhibits to the trial court and allow the trial court to determine the fees; (3) a bench trial is held; and (4) a jury trial is held. He explained that having a jury trial only to determine attorney's fees is uncommon. It is not efficient or cost effective; "in my view it's a waste of money." Zucker proposed submitting affidavits to the trial court, but Bennett requested a jury trial.

Hellberg testified the reasonable and necessary fees through trial in the Dec Action were $261,276.00; that amount is based on the factors outlined by the Texas Supreme Court in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019). Hellberg testified he segregated the fees for the Dec Action from

those for the 202 Action and Malpractice Action, and he explained to the jury how the exhibits reflected the segregated fees. When asked whether the fees from the 202 Action and Malpractice Action are included in his request for attorney's fees, Hellberg testified: "No. None of those fees are included in my calculus for reasonable and necessary fees in this case."

Hellberg explained the appellate process to the jury. For an appeal to the court of appeals, Hellberg testified he considered how many hours would be required for Zucker's lawyers to consider the appellant's opening and reply briefs, draft an appellee's brief, and handle oral arguments. He estimated that process would require 100 hours. He multiplied the 100 hours by a blended hourly rate of $500 because the work would be divided among several lawyers with different billing rates. Hellberg then explained the process of appealing to the Texas Supreme Court and, again, provided the number of hours he expected would be required at each stage and the blended billing rate. Zucker requested appellate fees according to those calculations.

The jury awarded fees as follows: (1) $203,000 for representation in the trial court; (2) $37,500 for representation in the court of appeals; (3) $14,000 for representation at the petition for review stage at the supreme court; (4) $20,000 for representation at the merits briefing stage at the supreme court; and (5) $12,500 for representation through oral argument and the completion of proceedings at the supreme court.

After trial, Zucker filed a petition to enter judgment. In his response, Bennett again argued the award of declaratory relief was improper and asserted the fees in the proposed final judgment were improper because Zucker's request for declaratory relief was unnecessary and inappropriate, the fees must be equitable and just, and the requested fees seek compensation for non-legal work. The judgment orders Bennett pay the attorney's fees found by the jury as well as $3,1470.70 in costs to Zucker.

### 2. *Award is Reasonable and Necessary and Equitable and Just*

Bennett argues the amount of the award is not reasonable and necessary. "[T]o secure an award of attorney's fees from an opponent, the prevailing party must prove that: (1) recovery of attorney's fees is legally authorized, and (2) the requested attorney's fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process." *Rohrmoos Venture*, 578 S.W.3d at 487. As applicable here, the UDJA authorizes the recovery of attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

A party seeking attorney's fees "bears the burden of providing sufficient evidence" of both the reasonable hours worked and a reasonable hourly rate. *Rohrmoos Venture*, 578 S.W.3d at 498. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time

–28–

required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* "General, conclusory testimony devoid of any real substance will not support a fee award. Thus, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Id.* at 501–02 (internal citations omitted). Contemporaneous billing records are not required but "are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id.* at 502.

Hellberg discussed his qualifications to testify about attorney's fees. In addition to providing billing records showing the particular services performed, who performed those services, how much time the person spent performing the services, and when the services were performed, Hellberg testified about the reasonableness of the hourly rates of each timekeeper and the total amount requested by Zucker. Hellberg also testified he did not seek to collect all fees that were billed to the file; rather, to the extent he did not consider certain fees reasonable to attempt to recover, he omitted them. The exhibits reflect the same. Hellberg testified he segregated out time that was spent for the 202 Action and the Malpractice Action and explained that segregation to the jury. Nothing in the record contradicts Hellberg's explanation to the jury about segregating fees, so we take it as true. *See generally Anderton v. Green*, No. 05-19-01294-CV, 2021 WL 1115549, at *4 (Tex. App.—Dallas Mar. 24, 2021, no pet.) (mem. op.) (citing *Snowhite Textile & Furnishings, Inc. v.*

–29–

*Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at *15 (Tex. App.—Dallas Dec. 14, 2020, no pet.) (mem. op.)).

Hellberg explained in detail why the attorney's fees incurred were high and how those high fees were driven by Bennett's litigation style. Taken together, Hellberg's testimony, the billing records, and the summary Exhibit 1 support the jury's award of attorney's fees and expenses incurred through trial and conditional amounts in the event of appeal. Based on this record, the trial court was within its discretion to conclude the fees awarded were reasonable and necessary.

Bennett also argues the fee award is not equitable and just. Whether it is "equitable and just" to award any portion of reasonable and necessary attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Anderton v. City of Cedar Hill*, 583 S.W.3d 188, 195–96 (Tex. App.—Dallas 2018, no pet.) (citing *Ridge Oil*, 148 S.W.3d at 162–63); *In Interest of K.K.W.*, No. 05-16-00795-CV, 2018 WL 3968475, at *12 (Tex. App.—Dallas Aug. 20, 2018, pet. denied) (mem. op.) (citing *Ridge Oil*, 148 S.W.3d at 162). The evidence shows that after Zucker filed his motion for summary judgment, Bennett requested numerous depositions—some of which appear to have been unnecessary and intended only to increase fees—fruitlessly and repeatedly sought sanctions, and took the unusual and costly step of demanding a jury trial on

attorney's fees.[4]  The litigation could have been resolved less expensively, but Bennett's litigation tactics in the Dec Action were consistent with his "outspend to submission type strategy."  The trial court endured this litigation and was familiar with the circumstances of the case.  Given the issues and litigation strategy employed in this case, we conclude the attorney's fee awards are equitable and just.

### 3. Sufficient Evidence Supporting Fee Award

Bennett argues the evidence is legally insufficient to support the fee award. A legal sufficiency or "no evidence" point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact.  *See, e.g., Stern v. Bella Custom Homes, Inc.*, No. 05-17-01114-CV, 2019 WL 3543574, at *5 (Tex. App.—Dallas Aug. 5, 2019, no pet.) (mem. op.); *Scott Pelley P.C. v. Wynne*, No. 05-18-00550-CV, 2019 WL 2462801, at *4 (Tex. App.—Dallas June 13, 2019, no pet.).  More than a scintilla of evidence exists when, as a whole, the evidence supporting the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *Wynne*, 2019 WL 2462801, at *4 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).  When

---

[4] We make no comment about the regularity of requesting a jury trial in this situation.  Our statement merely reflects the evidence in the record.

reviewing a legal sufficiency challenge, "we must view the evidence in a light that tends to support the disputed finding and disregard evidence and inferences to the contrary." *Id*. (quoting *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003)).

As discussed above, Hellberg's testimony and the admitted billing records meet the standard set forth in *Rohrmoos Venture*. The testimony and exhibits set forth (1) the particular services performed and when performed, (2) the identity of the timekeepers performing the services, (3) the reasonable amount of time required to perform the services, and (4) the reasonable hourly rates for the timekeepers performing those services. *See Wynne*, 578 S.W.3d at 705 (applying factors and concluding evidence legally sufficient). Having reviewed the record in the light most favorable to the judgment, we conclude the award of attorney's fees is supported by legally sufficient evidence.

We overrule Bennett's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Erin A. Nowell//

200488f.p05

ERIN A. NOWELL
JUSTICE

–32–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

MONTGOMERY J. BENNETT,
Appellant

No. 05-20-00488-CV     V.

MATTHEW ZUCKER, Appellee

On Appeal from the 330th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-19-12294.
Opinion delivered by Justice Nowell.
Justices Osborne and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MATTHEW ZUCKER recover his costs of this appeal from appellant MONTGOMERY J. BENNETT.

Judgment entered this 20th day of August, 2021.